HERREN v. FARM SECURITY ADMINISTRATION, DEPARTMENT OF AGRICULTURE, UNITED STATES OF AMERICA.

No. 13123.

Circuit Court of Appeals, Eighth Circuit.

Jan. 10, 1946.

**77**

DuVal L. Purkins, of Warren, Ark., for appellant.

Hugh M. Bland, Asst. U. S. Atty., of Fort Smith, Ark. (Clinton R. Barry, U. S. Atty., and Thomas C. Pitts, Asst. U. S. Atty., both of Fort Smith, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

May the United States be sued on contracts made by the Farm Security Administration?

The District Court held that the United States was not suable on any such contracts and sustained the Government's motion to dismiss the present complaint for lack of jurisdiction. See 60 F.Supp. 694.

The Tucker Act, 28 U.S.C.A. § 41(20), confers jurisdiction upon the District Court concurrent with the Court of Claims over certain kinds of claims against the United States not exceeding $10,000 in amount, among them being claims founded "upon any contract, express or implied, with the Government of the United States * * * in respect to which * * * the party would be entitled to redress against the United States, either in a court of law, [or] equity, * * * if the United States were suable."[1]

We think that such contracts as the Farm Security Administration is authorized to make are in actual fact contracts on behalf of and with the Government of the United States and constitute in sound legal concept obligations—to use again the language of the Tucker Act—"in respect to which * * * the party would be entitled to redress against the United States * * * in a court of law * * * if the United States were suable" (i. e. if no such thing as governmental immunity existed).

The Farm Security Administration, initially called the Resettlement Administration, was established by Executive Order No. 7027, dated April 30, 1935, as amended by Executive Order No. 7200, dated September 26, 1935, pursuant to the authority of section 4 of the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, 118. That section of the statute simply provided that "In carrying out the provisions of this joint resolution the President is authorized to establish and prescribe the duties and functions of necessary agencies within the Government."

It cannot be said that the statute endowed the Farm Security Administration with any automatic or implicit entityship, and the executive order by which it was created does not purport to give it an entitive status. It was constituted as a mere organ, bureau, or agency of the executive branch, without legal entityship, to assist in administering rural relief and furthering rehabilitation. Such contracts as it was authorized to make were accordingly not obligations on its own part entitively, but, if they were legal obligations, as the statute and the executive order certainly must have intended them to be, they were and could only be in fact obligations on the part of the United States using the name Farm Security Administration for administrative and identificatory convenience. In legal nature and effect they would be no different than contracts made, for instance, by the War Department or by any other nonentitive executive organ, bureau, or agency, in its own name but with the United States as the actual contracting party. Without some

[1] While the title of the complaint here runs against "Farm Security Administration, Department of Agriculture, United States of America, Defendant", the body of the complaint makes it clear that there is no attempt to sue the Farm Security Administration as an entity and that the action is intended to be one against the United States under the Tucker Act. It has been so treated by the United States in its motion to dismiss.

qualifying statute or some controlling regulation having the force of law, any such contracts, which had been authorized and were in all other ways valid, would seem to us legally, naturally, and expressly to be within the plain language of the Tucker Act of "any contract * * * with the Government of the United States * * * in respect to which * * * the party would be entitled to redress against the United States, either in a court of law, [or] equity, * * * if the United States were suable."

■ It is of course firmly settled that any waiver by Congress of the immunity of the United States from suit may not be extended beyond the plain language of the statute, Price v. United States, 174 U.S. 373, 375, 376, 19 S.Ct. 765, 43 L.Ed. 1011, even though "the present climate of opinion * * * has brought governmental immunity from suit into disfavor", Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 391, 59 S.Ct. 516, 519, 83 L.Ed. 784, but this principle of construction is not entitled to be made a judicial vise to squeeze the natural and obvious import out of such a statute or to sap its language of its normal and sound legal meaning, Moore v. United States, 249 U.S. 487, 489, 39 S.Ct. 322, 63 L.Ed. 721. The views which we have expressed above properly are within the bounds and policy of the immunity principle.

If the Farm Security Administration had been endowed with an entitive status, the contracts which it was authorized to make in its own behalf in performing its functions would not in traditional concept and legal understanding have constituted contracts with the United States as such but contracts with the corporate entity, and the United States itself would not be suable on such contracts under the Tucker Act. This would be true even though Congress might have chosen to cloak the corporation with governmental immunity. Cf. Keifer & Keifer v. Reconstruction Finance Corporation, supra, 306 U.S. at page 389, 59 S.Ct. 516, 83 L.Ed. 784. Suability may sometimes be a criterion in determining whether an entityship exists, but an entity, and especially a governmental one, having contracting power and obligational responsibility, may exist even though it is not suable. Almost uniformly, however, Congress has expressly made its corporate creations during the past two decades amenable to suit. See Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. at pages 390, 392, 59 S.Ct. 516, 83 L.Ed. 784.

■ Because, as we have indicated, the United States was in fact and in law the nonentitive Farm Security Administration, and because such contracts as the Farm Security Administration was authorized to make were and could only be in fact and in law contractual obligations on the part of the United States using the name Farm Security Administration for purposes of convenience, we think the District Court erred in its general holding that the United States could not be sued under the Tucker Act on any such contracts.

The contract that is here involved is a farm lease, and the action is one by the landowner to recover damages for breach of the covenant against waste. The United States has not questioned that the Farm Security Administration was authorized to enter into contracts of leases for land in carrying out its rehabilitation program, and hence for present purposes we do not examine that question. Nor has the question been attempted to be presented whether, if the Farm Security Administration could enter into contracts of leases, the lease sued on was in fact and in law one made by the Farm Security Administration, and we similarly are not now considering that question. The determination of that question perhaps, in part at least, requires the presentation of evidence as to the specific situation.

The complaint and the copy of the lease attached indicate that the land covered by the lease was a farm of some 700 acres in Ashley County, Ark., which contained 17 tenant houses and so was capable of division and subleasing to a number of needy farmers in the Farm Security Administration's program of rural rehabilitation.[2] The lease on its face runs from the landowner to the Ashley Homestead Association, Inc., but the complaint alleges in effect that the Ashley Homestead Association, Inc., is a nonstock, nonprofit corporation organ-

---

[2] For an account of the scope of the Farm Security Administration's rehabilitation activities, see Part 3 of the Report of Hearings under H. Res. 119, 78th Cong., 1st sess. (1944), before the Select Committee of the House Committee on Agriculture to Investigate the Activities of the Farm Security Administration.

ized by some of the agents and employees of the Farm Security Administration under the laws of Arkansas, Pope's Dig.Ark. §§ 2252–2257, with themselves as the incorporators, officers, and only persons constituting the corporation;[3] that the corporation was simply a creature and device of the Farm Security Administration and the lease actually was taken in the corporation's name as mere agent for the Farm Security Administration (and hence the United States); that the Farm Security Administration (the United States), and not the corporation, was the lessee in fact; that the Farm Security Administration had the possession and use of the property in carrying out its rehabilitation program, for the lease-term, by virtue of and under the lease; and that the waste for which recovery is sought was committed by the Farm Security Administration, in breach of the lease covenant, during its possession and operation of the farm under the lease.

█ Whether the Ashley Homestead Association, Inc., as a corporation had any real interest in the lease, or whether it was a mere agent of the Farm Security Administration in making the lease so that the use of its name was in effect simply a contractual designation for the Farm Security Administration in the instrument, and whether, if such was the case, the Farm Security Administration had authority to make or adopt a contract of lease in that manner and form on behalf of the United States, are questions which on the record and briefs now before us we must leave to the determination of the trial court on the remand of the case. Other questions also perhaps may be involved, and all of these of course will be left open, except that, if the Farm Security Administration was in fact the real lessee of the land, and if the use of the name Ashley Homestead Association, Inc., was in effect simply a contractual designation for the Farm Security Administration in making the lease, and if the Farm Security Administration had authority to make or adopt a contract of lease in that manner and form, then the United States may properly be held liable on the contract under the Tucker Act for any waste the Farm Security Administration may have committed in violation of the lease covenant.

█ The United States has attempted to argue that even though it might be suable for rent on such a lease made by the Farm Security Administration, as a contract with the United States, the Tucker Act does not permit it to be sued for waste because such an action is one sounding in tort. But a suit to recover on a covenant in a lease against waste is patently one having its source in contract and not one sounding in tort. That is true in the landlord and tenant relationship as a matter of implied obligation even where there is no express waste covenant. United States v. Bostwick, 94 U.S. 53, 68, 69, 24 L.Ed. 65; Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 395, 59 S.Ct. 516, 83 L.Ed. 784.

The judgment is reversed and the cause is remanded for further proceedings.

---

[3] As to the propriety and legality of Farm Security Administration employees organizing facilitating corporations under state law, in relation to the question of the use and distribution of public funds, see the conflicting opinions of the Comptroller General, Op.Com.Gen. No. B23881, dated Mar. 5, 1942, and of the Attorney General, dated May 1, 1942, 40 Op.Atty.Gen. ——, both of which opinions are contained in the Report of Hearings under H. Res. 119, 78th Cong., 1st sess. (as referred to in footnote 2, supra), Part 3, at pages 1140 and 1150, respectively. That particular question, however, would not appear to be of any concern in the present situation.

It may be indicated also informationally that, while in the present case the complaint suggests that no one except Farm Security Administration employees had any interest in the Ashley Homestead Association, Inc., the general practice of the Farm Security Administration in organizing corporations was explained in the report which it made to the Committee of Congress, Report of Hearings under H. Res. 119, 78th Cong., 1st sess., supra, Part 3, page 1001, as follows: "Frequently the rehabilitation of individual farmers in certain areas is impossible because adequate land resources are not available. One of the main reasons for this situation is the land is owned and operated in fairly large tracts, and the landowners are unwilling to break up the tracts piece by piece and make individual units available to several different small farmers. A simple and satisfactory way to help small farmers get access to such farm land under a secure lease is to help them establish an association which can lease the entire large tract and then sublease individual family-type farms to the members. In this way the landowner makes a single contract, and, as a result of a Farm Security Administration loan to the leasing association, he is able to get a 1-year advance payment of cash rent on the entire tract."