**Lloyd R. STUBBS, Individually and as Administrator of the Estates of John R. Stubbs and Mary E. Stubbs, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 77–2054.

United States Court of Appeals, Tenth Circuit.

Argued March 16, 1979.

Decided May 2, 1980.

Anthony M. Thurber, Salt Lake City, Utah, for plaintiff-appellant.

Robert W. Frantz, Dept. of Justice, Washington, D. C. (Sanford Sagalkin, Acting Asst. Atty. Gen., Washington, D. C., Max D. Wheeler, Asst. U. S. Atty., Salt Lake City, Utah, and Eric S. Gould and Dirk D. Snel, Attys., Dept. of Justice, Washington, D. C., were on brief), for defendant-appellee.

Before SETH, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a quiet title and partition suit by plaintiff-appellant Stubbs as an individual and administrator against the Government involving a tract of approximately 80 acres of land in Utah County, Utah. The district court granted summary judgment in favor of the Government and plaintiff appealed.[1]

Two main questions are presented: (1) whether the plaintiff-appellant's quiet title claim is barred by the 12-year limitation of 28 U.S.C. § 2409a(f); and (2) whether a substantial dispute as to plaintiff-appel-

---

1. The Government suggests that we are without appellate jurisdiction for lack of compliance with the "separate document" requirement of Rule 58, F.R.Civ.P. We disagree.

The district court's "Order in Summary Judgment," was filed and entered in the docket on September 8, 1977. It concluded that "IT IS HEREBY ORDERED that plaintiff's motion for summary judgment be denied and that defendant's be, and it is hereby, granted." The docket sheet shows that notice thereof was mailed on September 8, citing Rule 77(d). No further entry of judgment was made by the clerk. The notice of appeal and bond were filed on November 7, 1977, and notice was mailed to counsel on November 8, 1977, of the notice of appeal.

Our record shows docketing of the appeal and briefing proceeding without any motion or objection by the Government based on the lack of a separate document and that the first mention of the jurisdictional question was made in the Government's answer brief filed June 8, 1978. In these circumstances we feel the objection, if it is correct, was waived. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387–88, 98 S.Ct. 1117, 1121–1122, 55 L.Ed.2d 357. Compelling mechanical compliance with the rule here would mean a dismissal of the appeal and require a further entry in the district court and new appellate procedures. "Wheels would spin for no practical purpose." *Id.* at 385, 98 S.Ct. at 1120.

lant's title prevents his assertion of a partition claim against the Government under 28 U.S.C. § 2409. The facts appearing without dispute in our record follow, with the few instances of controversy being noted in our discussion.

I

*The factual background*

The chain of title to the subject tract dates back to June 9, 1920, when appellant Lloyd Stubbs's grandfather, John R. Stubbs, purchased this tract along with other property from the State of Utah. A patent was issued on that date and recorded in 1921. (R. 96, 129). By warranty deed executed on November 6, 1926, John R. Stubbs and his wife, Mary E. Stubbs, conveyed the subject tract and another parcel to the estate of Jesse C. Stubbs, the deceased son of John R. Stubbs. (R. 96, 130). This deed was recorded in 1927. (R. 130). This attempted conveyance to the estate is challenged by appellant as being void under Utah law.[2] This contention is the genesis of the controversy before us.

Administration of the estate of Jesse C. Stubbs took several years to complete. In 1936, a decree of distribution was entered in the state probate court providing that title to the subject tract passed to Jesse's son, Clifford L. Stubbs. Jesse's two other sons took interests in other property. (R. 97–98, 142–143). By warranty deed executed on September 8, 1937, Clifford conveyed various tracts of land, including the subject property, to the United States. The deed was recorded in the office of the Utah County Recorder on September 9, 1937. (R. 98, Ex. K).

Appellant, however, claims both a surface interest and a mineral interest in the subject tract. The surface interest, which is in dispute and is the subject of this suit, is based on various intestate transfers and quit-claim deeds under which appellant claims to have title to the surface interest in the tract. The Government does not dispute appellant's mineral rights in the property.

Appellant, like the United States, traces his chain of title to John R. Stubbs as patentee of the State of Utah. John died intestate on November 27, 1926, shortly after the conveyance of the property to the estate of his deceased son, Jesse C. Stubbs. (R. 99, 148).[3] John's widow, Mary E. Stubbs, was appointed administratrix of John's estate. The decree of distribution of John's estate entered in the state probate court in 1930 omitted any reference to the subject tract, but contained a residuary clause providing for distribution of the remainder of John's estate to Mary. (R. 99–100, 155–156).

On March 20, 1952, appellant purchased the mineral rights in the subject tract from the Knight Investment Company. (R. 61, 100).[4] In order to make use of these rights appellant applied to the United States for a special use permit to cross the tract. The Government issued the permit in 1953, and appellant was notified of its formal approval by a letter on June 5, 1953, from the acting supervisor of Uinta National Forest. (R. 100, 161–167).[5]

In November 1928, Mary E. Stubbs, John's widow, married J. J. Craner. She died on May 7, 1954. (R. 99, 101, 151). On May 17, 1955, John W. Stubbs, appellant's father, petitioned for letters of administration of the estates of John R. Stubbs and

---

2. Appellant maintains that under Utah law this conveyance was invalid on its face and conveyed no title as such a grantee was incapable of taking title to the property. (R. 239–243). *See Nilson v. Hamilton,* 53 Utah 594, 174 P. 624, 626 (Utah).

3. Jesse C. Stubbs was the brother of John W. Stubbs, who was the father of appellant.

4. The mineral rights were originally conveyed to the Knight Investment Company by John R. Stubbs and Mary E. Stubbs on May 26, 1921. (R. 96). As stated, the United States does not dispute appellant's mining rights in the subject property.

5. The permit was issued to appellant for the purpose of "constructing and maintaining an access road to be used in hauling clay for industrial purposes." (R. 161).

Mary E. Stubbs, alleging that the decedents owned "a bare record interest" in the subject tract and certain other property conveyed in the 1926 deed from John R. Stubbs to the estate of Jesse C. Stubbs. (R. 101, 179).[6] In July, 1955, appellant brought a state court action to quiet title against his father, John W. Stubbs, in the latter's capacity as administrator of the estates of John R. Stubbs and Mary E. Stubbs. (R. 101, 183–86). The suit was necessitated when certain property (other than the subject tract) which had been purchased by appellant could not be conveyed to a subsequent purchaser from appellant because of an alleged cloud on the title. The alleged cloud arose because the property had been part of the same 1926 deed to the estate of Jesse C. Stubbs in which the subject tract was conveyed. (R. 101–02, 189–90).

A state court decree quieting title to this separate tract in favor of appellant was entered on August 9, 1955, based on the administrator's default. (R. 102, 192–95). At this time consideration was given to bringing a quiet title action against the United States regarding the subject tract, but the idea was dismissed when appellant was advised by counsel that the doctrine of sovereign immunity would preclude such a suit. (R. 102, 203). Thereafter appellant appears to have constructed an extensive system of roads and ditches on the property in question without objection from the Government. (R. 203).[7]

In 1960 appellant obtained a quit-claim deed to the subject tract from most of the living heirs of John R. Stubbs and Mary E. Stubbs. (R. 102, 203).[8] The deed was recorded in the Utah County Recorder's office on January 26, 1960. (Brief for the Appellant at 3).

Before instituting the instant suit appellant notified the Forest Service of his claimed interest in the subject tract. (R. 103, 219). The Forest Service has continuously asserted that title is in the United States. R. 103, 220–23). Appellant has also offered to exchange other property for release of the subject tract. (R. 103, 224–25). On December 30, 1975, appellant filed a notice of claim of interest in the parcel in the Utah County Recorder's office. (R. 103, 226–27).

Pursuant to a petition filed in the state probate court, appellant was appointed administrator of the estates of John R. Stubbs and Mary E. Stubbs on February 26, 1976. (R. 103, 228). Then on March 8, 1976, appellant commenced the instant action in the district court in both his representative and individual capacities pursuant to 28 U.S.C. § 2409a and 28 U.S.C. § 2409.[9]

---

**6.** Appellant's father stated that Mary E. Stubbs died intestate. (R. 179). However, her daughter, Hazel C. Stubbs, filed a petition for probate of the will of Mary E. Stubbs on July 23, 1973, eighteen years later. (R. 102, 207–09). The will did not specifically mention the subject tract, but the residuary clause provided for distribution of the remainder of the property to Hazel C. Stubbs, and Mary's two grandchildren, Max Wagstaff Stubbs and Mary Relva Stubbs. (R. 103, 210). There does not appear to be any public record showing that letters of administration were ever issued to John W. Stubbs. (R. 102).

**7.** In the district court appellant claimed that his acts after 1955 "grossly exceeded the license granted by the Special Use Permit," that this constituted notice to the Government that the permit was terminated or of no further effect," and that therefore the Government had "allowed [appellant] to use the land as though it were his own" (R. 235–36). The Government's response was that (1) appellant never expressly notified Forest Service officials that he considered the permit abandoned or terminated; (2) in 1962 he requested and was granted permission by the Forest Service to erect a sign where his road entered National Forest lands; and (3) Forest Service documents show that appellant continued to limit his activities in accordance with the terms and conditions of the permit. (R. 265–66).

**8.** Appellant did not obtain a quit-claim deed from Max Wagstaff Stubbs, the grandson of Mary E. Stubbs, until January 4, 1977, after institution of the instant action. (R. 258). Mary Relva Stubbs had assigned her interest in the will to Max on February 19, 1974. (R. 253).

**9.** 28 U.S.C. § 2409a provides in part:
    (a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest of water rights. . . . .

On cross-motions for summary judgment (R. 71, 90–91), the district court held that under all the evidence the court believed that plaintiff knew or was chargeable with knowing of the claim of the Forest Service covering portions of the tract in question when he was issued a special use permit more than 12 years ago; that this fact conclusively established that the limitation of 28 U.S.C. § 2409a precludes recovery; that there could be jurisdiction to hear plaintiff's partition claim only if there was no dispute that plaintiff and the United States held the property jointly; that his right to relief in partition was wholly dependent on a ruling in his favor in the quiet title action, which was denied as barred; and that the plaintiff's claim of adverse possession raised fact issues which preclude summary judgment. Summary judgment was therefore granted in favor of the Government, (R. 284–85), and plaintiff appealed.

## II

### The quiet title claim

█ Of course, the United States as sovereign is immune from suit save as it consents to be sued, *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–770, 85 L.Ed. 1058; *United States v. Lee*, 106 U.S. 196, 207, 1 S.Ct. 240, 249, 27 L.Ed. 171; and Congress may impose conditions upon a waiver of the Government's immunity from suit. *See United States v.*

*John Hancock Mut. Ins. Co.*, 364 U.S. 301, 306, 81 S.Ct. 1, 4, 5 L.Ed.2d 1; *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306. Moreover such limitations and conditions must be strictly observed and exceptions thereto are not to be implied. *Id.* at 276, 77 S.Ct. at 273.

By enactment of Pub.L. 92–562, § 3(a), 86 Stat. 1176 (1972), Congress waived sovereign immunity in quiet title actions against the United States, but expressly conditioned that waiver with the following statute of limitations:

Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(f).

█ As noted the district court found that appellant either knew or was chargeable with knowing of the Government's claim since the Forest Service issued the special use permit more than 12 years earlier. Notwithstanding the allegation in his complaint that neither he nor his predecessors became aware of the Government's claim to the subject tract until 1971 (R. 3),[10] appellant previously admitted that he knew of the Government's actions concerning the property since 1955. (R. 62, 76, 78, 132, 202–03).[11] We are, of course, dealing with

---

28 U.S.C. § 1346(f) vests the district courts with exclusive original jurisdiction over actions brought under § 2409a.

28 U.S.C. § 2409 provides in part:

Any civil action by any tenant in common or joint tenant owning an undivided interest in lands, where the United States is one of such tenants in common or joint tenants, against the United States alone or against the United States and any other of such owners, shall proceed, and be determined, in the same manner as would a similar action between private persons.

28 U.S.C. § 1347 vests the district courts with original jurisdiction in actions described in § 2409.

10. Appellant contends that following his discovery of the alleged invalidity of the Government's title in 1955, he began to treat the prop-

erty as if the United States had no interest therein. (Brief for the Appellant at 3).

11. In fact, in the Brief for the Appellant at 8 the following statement is made:

The first time anyone realized they had been mistaken about the title of the United States in the property was in 1955 when a purchaser's attorney informed plaintiff that the land he had acquired in the same manner the Government acquired the disputed land really did not belong to him. Before that time no one involved with that property knew or should have known of the invalidity of the claim of the United States. From that time plaintiff went far beyond the limits of the Special Use Permit, making extensive improvements and, in fact, the only improvements on the property since approximately 1933 (Defendant's Exhibit CC).

a summary judgment and cannot resolve factual disputes in the record. We are satisfied, however, that the record is sufficiently beyond dispute as to appellant's notice of the Government's claim to the land as far back as 1955.

There is no claim by appellant of procedural error by the granting of summary judgment because of factual disputes and appellant concentrates instead on his legal arguments (1) that his claim could not have accrued until he could have sued the Government after enactment of the Quiet Title Act in 1972, citing *Herren v. Farm Security Administration*, 153 F.2d 76 (8th Cir.);[12] (2) that the knowledge of the Government's claim referred to in § 2409a(f) is not shown to have been had by appellant and his predecessors because the term means discovery of the invalidity of the Government's claim, not just knowing of some claim by it; and (3) that the Government never had a "claim" within the meaning of § 2409a(f) because its supposed interest was a nullity.

First, we cannot agree with the argument that appellant's claim could not have accrued for purposes of § 2409a(f) until he could have maintained an action against the United States, namely after enactment of the Quiet Title Act in 1972. Under general principles the argument is reasonable and persuasive. *See* 54 C.J.S. *Limitations Of Actions* § 109. However, in the context of the waiver of sovereign immunity by the special statute involved here, we find the contention untenable. If the argument were accepted it would mean that all such

claims, no matter how old, would not be barred until 12 years after enactment of the 1972 law and could all be asserted. This argument has been rejected. In *Grosz v. Andrus*, 556 F.2d 972 (9th Cir.), Indian landowners seeking to quiet title to a portion of their trust lands against the United States and others similarly argued that delay in suing was justified because they could not have commenced their action until 1972, when the Quiet Title Act was enacted. The Ninth Circuit held the action barred and quoted from *Hatter v. United States*, 402 F.Supp. 1192, 1193–94 (E.D.Cal.), where the legislative history of § 2409a(f) was examined:

> To accept plaintiff's reasoning that the 12-year limitation of suit contained in § 2409a(f) did not begin to run until October 25, 1972, would mean that all claims to quiet title against the United States, no matter how ancient, could be brought until October 26, 1984. So broad a waiver of sovereign immunity is neither supportable in logic, nor by the Congressional history of § 2409a(f).

556 F.2d at 975. *Accord, Gendron v. United States*, 402 F.Supp. 46 (E.D.Cal.), *aff'd per curiam*, 524 F.2d 1154 (9th Cir.).

We are convinced that the legislative history of Public Law 92–562 reveals that Congress was reluctant thus to open up stale claims to litigation. H.R.Rep.No.92–1559, 92d Cong., 2d Sess. *reprinted in* [1972] U.S. Code & Admin.News, p. 4547 *et seq.* The Senate's original proposal would have permitted claimants to bring an action two

---

We feel it clear that appellant is thus bound by an admission that he ". . . knew or should have known of the claim of the United States," 28 U.S.C. § 2409a(f), in 1955.

We are mindful of the status of appellant both in his individual and representative capacities and that there might be a question whether knowledge he had as an individual would be imputed to him as administrator. However, no point is made of this in appellant's brief on appeal.

Because of knowledge which appellant clearly had as an individual by the time he acquired most of the interests in 1960, *see* note 8, *supra*, he cannot rely on his representative status in the subsequent probate to avoid the effect of limitations. The purpose of the instant case as

maintained by the administrator is to quiet title in appellant, and he himself had knowledge for more than the 12-year period. *See Birkie v. United States*, No. S 75–699–PCW (E.D.Cal., 1977) (Unpublished).

12. The holding in *Herren* is of no benefit to appellant. Appellant relies on a statement in the opinion that the principle of not extending waivers of immunity "is not entitled to be made a judicial vise to squeeze the natural and obvious import out of such a statute or to sap its language of its normal and sound legal meaning . . . ." *Id.* at 78. We readily accept this statement but feel it does not argue for a reversal here.

years after the effective date of the Act, thereby making the Act fully retroactive. As a result of objection from the Department of Justice,[13] the House of Representatives adopted the present wording which in effect made the statute retroactive in the sense of permitting the bringing of claims accruing within 12 years. *Id.* at 4550–53.[14] *See also, Hart v. United States*, 585 F.2d 1280, 1284 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310; *Hatter v. United States, supra* at 1194. Both the wording and legislative history of § 2409a(f) lead us to disagree with appellant's interpretation of the statute.

Second, the contention is made that the knowledge required by § 2409a(f) means plaintiff's discovery that the claim of the Government was invalid, not mere discovery of the fact that the claim was asserted. Even if it should be sound, the argument fails here on appellant's admissions as to the facts. Appellant knew both of the fact of the Government's claim as early as 1955 and of the legal theory that the Government's deed was a nullity. *See* note 11, *supra*. Thus there is no problem here of inadequacy of the showing of appellant's knowledge of the Government's claim because of improper reliance on constructive notice as in *Amoco Production Co., et al. v. United States, et al.*, 619 F.2d 1383 (10th Cir., 1980).[15]

Third, appellant says that the Government's deed was an absolute nullity, *see* note 2, *supra*. From this he argues that the Government had no claim within the meaning of § 2409a(f), nor any interest—legal or equitable—in the property, so as to cause the statute to run. An argument that a Government claim merely of "some sort of equitable interest" was not within the statute was rejected in *Hatter v. United States, supra*, 402 F.Supp. at 1194–95, and the court pointed out that statute "speaks only of disputes in title of real property in which the United States claims an *interest.*" *Id.* at 1195. (Emphasis in original); see § 2409a(a). We feel that notice of the claim of the Government under the deed it obtained and of its actions through the Forest Service was sufficient to come within the meaning of the statute so that the limitation in § 2409a(f) applied.

13. The Justice Department's objections to § 2409a(f) as passed by the Senate in S. 216 were expressed in a letter dated September 20, 1972, from the Deputy Attorney General to the Chairman of the House Subcommittee, which read in part as follows:

As you know, the Department of Justice has been reluctant to open up stale claims to litigation. If the bill were made fully retroactive, there could be a flood of litigation on old claims, many of which had already been submitted to the Congress and rejected. However, we believe that a reasonable period of retroactive application of the bill would not put an undue burden on the Department and the courts, and we would be willing to accept a provision making the bill retroactive for twelve years.

Similarly, we suggest that the statute of limitations be extended from six to twelve years for quiet title actions. This will give claimants to land in which the United States also claims an interest ample time to bring suit without necessitating the United States' having to defend against stale claims.

1972 U.S.Code Cong. & Admin.News, p. 4553.

14. The House Report explained the reason for the change as follows:

As has been noted one of the basic provisions in the committee amendment is the retroactive feature which provides for a 12 year statute of limitation. The original draft submitted to the Congress by the Justice Department explicitly provided that the proposed bill would ". . . not apply to any claim or right of action which accrued prior to the date of its enactment." At the hearing on S. 216 and related bills on February 24, 1972, much of the testimony related to some of the specific problems concerning title to lands which motivated, in part, the introduction of this legislation. The existing problems faced by many citizens concerning titles to land in which the United States claims an interest could not be the subject of actions under legislation with the original Department Language which would have had only prospective force. In the opinion of the committee, the language proposed by the Justice Department providing for a twelve year period for the bringing of such actions will make a reasonable provision for the bulk of the existing controversies concerning title. *Id.* at 4550–4551.

15. Since appellant admittedly had actual notice of the deed to the United States by 1955 and of the Forest Service's action in issuing the permit, we have no problem of insufficiency of constructive notice as in the *Amoco* case. (*See* R. 76, 132, 161–67, 203).

In sum, we must hold that appellant's quiet title claim was barred by § 2409a(f).

## III

### The partition claim

Appellant's complaint alleged that he and the Government were tenants in common in the property, which is subject to partition under 28 U.S.C. § 2409. (R. 3). He argues that these allegations bring him within the partition statute and that the existence of a dispute and lack of a determination quieting title in his favor do not defeat jurisdiction under the partition statute, citing *Pena v. Sling*, 135 Tex. 200, 140 S.W.2d 441.

28 U.S.C. § 1347 [16] vests the district courts with original jurisdiction over partition actions where the United States is a tenant in common or joint tenant. 28 U.S.C. § 2409,[17] entitled "Partition actions involving United States" provides that any civil action against the Government by a tenant in common or joint tenant "shall proceed, and be determined in the same manner as would a similar action between private persons." *Id.* The district court held here that it was without jurisdiction to entertain the partition action because there was a dispute as to whether the parties held the property jointly. The court found that any right to relief in partition was wholly dependent upon a ruling in appellant's favor in his action to quiet title. (R. 284). We must agree that the district court was without jurisdiction to hear the partition action in these circumstances.

■ We are persuaded by the prior interpretations that the partition statute is unavailable where a determination of a dispute as to a plaintiff's interest in property must be made as a predicate for the partition claim. In *Stanton v. United States*, 434 F.2d 1273 (5th Cir.), plaintiffs brought a partition action against the United States and alleged that they were owners and in

possession of an undivided fractional interest in the subject property. The United States disputed both of plaintiffs' claims. A review of the record disclosed a substantial question as to the existence of a tenancy in common. The Fifth Circuit affirmed a dismissal of the suit, stating (*id.* at 1276):

> The scope of the statute waiving sovereign immunity as to partition suits was . . . confined to those cases in which the plaintiff's title is undisputed.

In *Rambo v. United States*, 145 F.2d 670 (5th Cir.), *cert. denied*, 324 U.S. 848, 65 S.Ct. 685, 89 L.Ed. 1408, the plaintiffs asserted that they were tenants in common with the Government and sought partition under the predecessor of 28 U.S.C. § 1347.[18] The Government was in exclusive possession of the disputed lands and claimed the entire title by an eminent domain proceeding. The Fifth Circuit found that the primary purpose of the action was to contest the Government's title, with partition merely an incident thereto. The court upheld a dismissal, stating that there was an absence of jurisdiction to try the title of the United States. *Id.* at 671. *See also Jones v. United States*, 127 F.Supp. 31, 32 (E.D.N.C.).

A review of the record here reveals that appellant's title is not undisputed. The district court pointed out that plaintiff's claim of having held the property adversely raises fact issues which would preclude summary judgment in plaintiff's favor. Appellant, of course asserts that he is the owner of an undivided interest in the subject tract by virtue of the quit claim deed from the heirs of John R. Stubbs and Mary E. Stubbs. He also claims that he has been in continuous possession and control of the tract for over twenty years. (R. 2). The Government contends that it has been in possession and control of the property since acquiring title by warranty deed in 1937. Any occupancy of the tract by appellant is said to have been as lessee or permittee of the United

---

**16.** 28 U.S.C. § 1347 provides:

The district courts shall have original jurisdiction of any civil action commenced by any tenant in common or joint tenant for the partition of lands where the United States is

one of the tenants in common or joint tenants.

**17.** *See* note 10, *supra*.

**18.** 28 U.S.C. § 41(25) (1940 rev.).

States or under appellant's mineral rights. (R. 7–8, 48–49).[19]

It is enough that "a real and substantial dispute exists as to [appellant's] title to an interest in the land." *Stanton, supra* at 1277. It is thus apparent that as a partition claim appellant's case must fail because the partition statute may not be invoked where there is a dispute as to the title of the plaintiff who would sue the Government, and such a dispute is real here. *See, Rambo, supra* at 671.[20]

We have noted that both the *Stanton* and *Rambo* opinions emphasize the fact that quiet title actions could not be maintained against the Government at that time. And, of course, that is not the case since the Quiet Title Act was passed in 1972. We do not feel that this calls for a different interpretation now of the partition statute, however. When passed it was not intended to allow its use to settle disputes as to title, and we feel that is still a proper construction of the partition statute. We feel that a case such as this, which calls for a title determination, must be brought and maintained within the constraints of the Quiet Title Act.

We have considered *Pena v. Sling, supra,* the Texas case relied on by appellant. It does hold that in a Texas statutory partition action the court may determine disputed issues of title. 140 S.W.2d at 447. However, the problem of waiver of sovereign immunity was not involved, with the special rules as to interpretation of such a waiver. Since the federal statutes have a specific provision in § 2409a on a waiver of immunity for quieting title against the Government, we must agree that those provisions and their limitation must be followed where there is a title dispute which the plaintiff seeks to have determined.[21]

## IV

### *The taking and just compensation argument*

Appellant cites to us *Jones v. United States,* 127 F.Supp. 31 (D.N.C.) as permitting a plaintiff, to whom quiet title and partition relief were unavailable, to receive just compensation for land taken by the Government in circumstances similar to those here. In addition, appellant's brief

---

**19.** Appellant contends that the Government's answer falls short of an outright denial of his allegations of possession and ownership. Brief for the Appellant at 11. Appellant relies upon the Government's admission that appellant may have occupied the property as a permittee (R. 8, ¶ 5), and the Government's failure to answer the allegation that its title derives from an invalid deed. (R. 9, ¶ 8).

These points are not persuasive. The admission that appellant occupied the tract as a permittee supports the Government's assertion that it was in possession of the surface interest. Moreover, the Government's pleading in its answer that the allegations concerning the Government's claim being derived from an invalid deed are conclusions of law requiring no answer, (*see* R. 2, 9), was a reasonable pleading response involving no admission.

**20.** Appellant argues that *Rambo* is inapposite because it really was an action to quiet title, but was brought under the guise of partition since 28 U.S.C. § 2409a had not yet been enacted. The action there is said to have failed because possession and/or legal title were neither alleged, nor provable, whereas here appellant made both allegations and is able to produce the required proof. We cannot agree. Contrary to appellant's contention the plaintiffs

in *Rambo* did allege that they held title to the disputed property. However, the fundamental flaw in appellant's reasoning is that *Rambo* held that such a partition action is not the appropriate vehicle for proving either possession or title, which must be undisputed at the time partition is sought.

**21.** In its memorandum filed in the district court in support of its cross-motion for summary judgment, the Government sought to preserve its right to claim title through adverse possession. (R. 126–127, 276). However, the Government acknowledged that the district court could not then rule on the adverse possession issue as it was based on controverted facts. The district court in no way based its ruling on adverse possession. (R. 284–85).

Appellant contends that in view of this assertion, the Government has consented to a quiet title suit, citing *United States v. Phillips,* 362 F.Supp. 462, 463 (D. Neb.). We cannot agree. In that case the United States itself brought the action to quiet title. The court there held only that under those circumstances a counterclaim against the United States seeking to quiet title in the defendant was permissible, even absent statutory consent.

before us concludes that we should reverse and that he should be entitled to present evidence that the Government wrongfully deprived him of his property without just compensation. (Brief for the Appellant at 11–14).

We find sparse mention of such a theory in the district court. Appellant argued by a brief in that court (R. 280–81), that if the Government's argument is accepted, *i. e.*, that he is barred from asserting the validity of his title, from seeking partition, or from securing just compensation for the Government's taking of his property, then the legislative intent of the statutes would clearly be violated, citing the partition and quiet title statutes, 28 U.S.C. §§ 1347, 2409 and 2409a. He argued that the object of these statutes was to secure a remedy for Governmental taking, for removing of clouds on title or for division according to the respective interests of the parties. However, unlike the *Jones* case, the complaint in the instant case asserted no claim of a taking or a right to just compensation,[22] and no such claim was mentioned in the summary judgment order of the district court.

 The Government has commented that appellant's suggestion that he was without a remedy is "disingenuous, since he or his predecessor in title could have, between 1937 and 1943, brought an action for compensation under the Tucker Act," citing *Bourgeois v. United States*, 545 F.2d 727, 729 (Ct.Cls.); and *United States v. 422,978 Square Ft. of Land, San Francisco*, 445 F.2d 1180, 1187–88 (9th Cir.). (Brief for the Appellee at 17, n. 14). The Government thus points out the bar of the six-year general statute of limitations in 28 U.S.C. § 2401(a). On this record we feel it clear that in view of the deed to the Government which was recorded in 1937, and the Government's exercise of control as evi-

denced by its Forest Service permit to appellant in 1953, any claim under the theory of a taking for which just compensation might be available under the Tucker Act, *e. g.*, *Bourgeois v. United States, supra* at 729, would have been barred before the commencement of the instant case in 1976. *See United States v. 422.978 Square Ft. of Land, supra* at 1187–89 (9th Cir.); *Kabua v. United States*, 546 F.2d 381, 383–84 (Ct. Cls.), *cert. denied*, 434 U.S. 821, 98 S.Ct. 63, 54 L.Ed.2d 77. Thus in any event a claim of a taking and for just compensation is untenable.

In sum, no error has been demonstrated in any of the rulings of the district court and the judgment is accordingly

AFFIRMED.

---

22. The complaint alleged (R. 1), that ". . . this action is brought . . . pursuant to the provisions of 28 U.S.C. Section 2409(a), 1317 (sic) (2409)," and later cited (R. 3) 28 U.S.C. § 2409 in the second cause of action in the complaint again. There being no § 1317 in Title 28, we assume that citation was an error and that reference was intended to § 1347, the partition statute cited in the Brief for the Appellant at 9. While citation to jurisdictional statutes is not necessary or controlling, we feel that the citations do show, together with the entire pleading, that the complaint was not intended to allege a just compensation claim within the Tucker Act provisions in 28 U.S.C. § 1346(a)(2).