**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank J. GAMMACHE, Jr., Defendant-Appellant.**

**No. 82–1690.**

United States Court of Appeals, Tenth Circuit.

July 29, 1983.

G. Richard Mantlo of Lamb, Metzgar & Lines, Albuquerque, N.M. (Lamb, Metzgar & Lines, P.A., Albuquerque, N.M., were also on the brief), for defendant-appellant.

Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C. (William L. Lutz, U.S. Atty., Raymond Hamilton, Asst. U.S. Atty., Albuquerque, N.M., Edward J. Shawaker and Kathleen P. Dewey, Attys., Dept. of Justice, Washington, D.C., were also on the brief), for plaintiff-appellee.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

The Government commenced this action under 28 U.S.C. § 1345 for a declaratory judgment, to quiet title to the land in dispute, and for ejectment. Defendant-appellant Frank Gammache, Jr., counterclaimed for similar relief. Defendant Gammache brings this timely appeal from the district court's judgment granting the Government's motion for summary judgment and quieting title in the United States to the two disputed parcels of land, some 9.5 acres, adjacent to the Santa Fe National Forest in New Mexico, claimed by both defendant Gammache and the Government.

I

In 1980, prior to commencement of the instant action, defendant Gammache brought his own suit against the United States to quiet title in him to the disputed land.[1] Gammache and the Government

---

1. *Frank J. Gammache, Jr. v. United States,* United States District Court, District of New Mexico, Civ. No. 80–424 HB. The active dispute between defendant Gammache and the

claim the land through different chains of title.[2] The district court there ruled that defendant's action was time barred by the twelve year limitation on such actions provided by 28 U.S.C. § 2409a(f), and dismissed the suit.[3]

On June 10, 1981, the Government initiated the instant action to quiet its title to and to eject defendant from the land in question.[4] Both parties moved for summary judgment, and the court granted summary judgment to the Government, quieting its title in the land. (I R. 263). The court's order stated that the running of the twelve year limitations period of 28 U.S.C. § 2409a(f) affected not only defendant's ability to bring a quiet title action against the United States, but also divested defendant of his estate in the land and vested it in the United States. (I R. 264).

There is a dispute, and some uncertainty, concerning whether the district court also grounded the summary judgment for the Government on the merits of the Government's chain of title. The Government says the court *did* also reach and decide the merits of the title dispute in its favor, which the defendant denies. The Government relies on portions of the following language in the district court's opinion to support its position that the court reached the merits of the dispute:

> After considering the arguments of the parties, the exhibits submitted in conjunction with the motions, and the entire record, the Court concludes that defendant's motion is without merit and should be denied, [and] plaintiff's motion for summary judgment quieting its title should be granted....
>
> \*   \*   \*   \*   \*   \*
>
> *Even if* the United States did not acquire good title through the Warranty Deed it received in 1934, the lapse of the twelve year limitation period not only barred defendant's remedy but also divested him of his estate and vested it in the United States. 5 *Thompson on Real Property* § 2541, pp. 589–591 (1979 Replacement). Defendant cannot claim good title as a defense any more than he can assert it as an offense. The United States is entitled to a judgment quieting its title and declaring that defendant's possession and use of the disputed land is trespassory....

(I R. 263–64) (Emphasis added).

The district court thus clearly spelled out support for its ruling by reliance on the

---

Government as to the ownership of the land dates back to a 1963 suit by MHG Corporation against the United States. (*See* Brief of Appellant at 6; I R. 103–04). Defendant had a large interest in MHG. (I R. 103–04). Despite having been brought to the attention of the courts at least four times, the controversy has apparently never been settled on the basis of the merits of the asserted chains of title. *Id.*

2. The key to the dispute seems to be the proper effect of the judgment in *Trinidad Baca v. The Unknown Heirs of Jacinto Palaez,* No. 26 slip. op. (N.M.Dist.Ct., July 17, 1913) (I R. 130–45). *See* I R. 31–97, 98–239.

3. Through 29 U.S.C. § 2409a(a), the United States waives its sovereign immunity with regard to certain real property quiet title actions, thus allowing itself to be named as a defendant in such actions. Section 2409a(f), however, provides:

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued

on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

In defendant's prior action, the district court dismissed the suit, finding that defendant "or his predecessor in title knew or should have known of the interest of the United States as early as 1935," and that § 2409a(f) therefore barred the suit. (I R. 25).

4. Defendant sought to file a two-part counterclaim. (I R. 17–19). The first cause of the counterclaim asserted defendant's superior title to the land, and was in the nature of a quiet title claim; the court denied the motion to file this cause, finding the United States immune from suit under 28 U.S.C. § 2409a(f) by reason of limitations as in defendant's 1980 action against the Government. (I R. 28, 263). The counterclaim's second cause asserted a claim for unjust enrichment for improvements defendant made to the land; the court allowed defendant to file the second cause, and it was ultimately disposed of through a judgment to which the parties stipulated. (I R. 28, 266, 273, 275).

effect of § 2409a(f) and the running of the limitations period. We are in doubt whether the court also actually intended to rule on the merits of the title dispute and the documentary evidence. Despite considerable briefing below by the parties on the complicated circumstances surrounding their opposing title claims (I R. 1–14, 32–97, 98–239, 247–52, 256–59, 260–62), the district court's opinion makes no analysis of those claims in its Memorandum spelling out its conclusions. An appellate court may review or decline to review a ground which the opinion below does not clearly indicate as a basis for the ruling.[5] However because of the long-standing dispute in this case we will consider the merits of both issues as possible grounds of support for the summary judgment. We will first treat the limitations issue involving § 2409a(f),[6] and then the merits of the title claims of the parties.

## II

Congress' stated purpose in creating a limited waiver of sovereign immunity by enacting 28 U.S.C. § 2409a was "to allow the United States to be made a party to actions in the United States District Court to quiet title to lands in which the United States claimed an interest." H.R.Rep. No. 92–1559, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4547, 4547. The statute was designed to remedy the problem then existing that unless and until the United States voluntarily brought a quiet title or similar action, disputes regarding title to real property between the Government and other parties could not be determined, and it was impossible for claimants to have their rights adjudicated.[7]

■■■ Congress limited its waiver of sovereign immunity through 28 U.S.C. § 2409a(f).[8] Timeliness thereunder is a jurisdictional prerequisite to a quiet title action against the Government. *Bradford v. United States,* 651 F.2d 700, 703 (10th Cir. 1981); *Knapp v. United States,* 636 F.2d 279, 282 (10th Cir.1980). Here the district court has extended the effect of the running of the limitation period beyond barring defendant's remedy—his right to bring an action against the United States. The court has extended the statute so as to affect defendant Gammache's substantive rights—divesting him of his title to the disputed land and denying him a defense on the merits in the Government's action against him. We feel this significant extension of § 2409a(f) is unwarranted and in error.

Section 2409a seems to have been designed merely to afford a remedy for adjudication of title disputes with the Government; its wording does not address the creation or curtailment of substantive rights. Nothing in the language of § 2409a or its legislative history suggests that the limitation in § 2409a(f) was intended to have any preclusive effect other than to time-bar stale claims asserted in quiet title actions against the Government.[9] This in-

---

**5.** *See, e.g., Lindsey v. Dayton-Hudson Corp.,* 592 F.2d 1118, 1124 (10th Cir.1979); *Winter v. Local 639, International Brotherhood of Teamsters,* 569 F.2d 146, 151 (D.C.Cir.1977).

**6.** Since the district judge relied primarily, if not entirely, on his views concerning the limitations issue and § 2409(a)(f), we will consider that issue first.

**7.** H.R.Rep. No. 92–1559, 92d Cong., 2d Sess., Executive Communication from the Department of Justice, *reprinted in* 1972 U.S.Code Cong. & Ad.News 4547, 4554; Report of the Department of the Interior to the Senate Committee on the bill S.216 as originally introduced. *Id.* at 4556. The most common application of the statute was expected to be in cases, as here, of boundary disputes between the United States and owners of adjacent property. *Id.* at 4551–52, 4554.

**8.** "The United States as sovereign is immune from suit save as it consents to be sued ... and Congress may impose conditions upon a waiver of the Government's immunity from suit." *Stubbs v. United States,* 620 F.2d 775, 779 (10th Cir.1980) (citations omitted).

**9.** No portion of the legislative history shows any intent on the part of the Congress to use § 2409a(f)'s limitation period as the basis for granting prescriptive title to the Government in cases of disputed property. The main concern in fixing the time of the limitation period seems to have been the adoption of a reasonable limitation period with retroactive effect. *See Stubbs v. United States,* 620 F.2d 775, 780–81 and note 13. (10th Cir.1980).

terpretation is buttressed by the fact that limitations provisions generally are held to affect only a party's legal remedy and not the underlying substantive right. The Supreme Court, in *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945), stated, "This Court in *Campbell v. Holt* [115 U.S. 620, 624–26, 6 S.Ct. 209, 211–212, 29 L.Ed. 483 (1885)] adopted as a working hypothesis, as a matter of constitutional law, the view that statutes of limitation go to matters of remedy, not to destruction of fundamental rights." *See Cooper Stevedoring of La., Inc. v. Washington,* 556 F.2d 268, 272 (5th Cir.1977); *Davis v. Valley Distributing Co.,* 522 F.2d 827, 830 (9th Cir.1975), *cert. denied* 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977); 51 *Am.Jur.2d* §§ 15, 21; IV *American Law of Property* § 18.96. "The most prevalent type of limitation statute is one which withdraws the right to make use of a legal remedy either after a fixed date or after the lapse of a certain period since accrual of the right.... In the main, statutes of this type bar the remedy only but do not extinguish the right ..." *Id.* at 839. The language and history of § 2409a(f) seem most reasonably to place it in this general class of statute.

There are situations in which statutes of limitations are said to be substantive in nature, to affect both remedy and right. Where a statute creates a right and also incorporates a limitation of the time in which a suit to enforce that right may be brought, as where the legislature creates a right of action not cognizable at common law, the running of the legislative limitation period is also said to extinguish that right. *See Cox v. McDonnell-Douglas Corp.,* 665 F.2d 566, 571 (5th Cir.1981);

*Chauffeurs, Teamsters, Warehousemen, and Helpers, Local Union No. 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1026 (7th Cir. 1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981); *Franklin v. City of Marks,* 439 F.2d 665, 668 (5th Cir.1971); *Kansas City, Missouri v. Federal Pacific Electric Co.,* 210 F.Supp. 545, 550–51 (W.D. Mo.), *rev'd on other grounds,* 310 F.2d 271 (8th Cir.1962). Section 2409a does not, however, create any substantive property rights; they exist entirely separate and apart from the remedial statute. Section 2409a is merely Congress' limited waiver of sovereign immunity, creating a procedural device for the purpose of adjudicating contested rights in real property.

Thus, we cannot agree with the district court that § 2409a(f)'s bar somehow divested defendant Gammache of his title to the disputed land and vested prescriptive title in the United States. The authorities relied on by the district court suggest that the United States should acquire the contested property such as by a theory of disseisin where the disseisor might be said to have acquired, by his disseisin, "something in the nature of a defeasible fee, ... a fee upon condition subsequent, subject to being cut off by a writ of possession or of right. The statutes of limitations by denying these writs to the disseisee thus converted the defeasible fee into an absolute one ..." 5 *Thompson on Real Property* § 2541, p. 583 (footnotes omitted). Section 2409a(f) is not, however, an adverse possession statute of the type discussed in this treatise, relied on by the district court, and the instant case involves no claim by the Government of acquisition of title by adverse possession.[10] Section 2409a(f) is not a statute of the type concerning prescriptive title acquired by

---

10. The Government did not allege that it had possession of the disputed land. *See* note 12, *infra.* Moreover, the defendant's appellate brief at p. 2 asserts that defendant or his predecessors in interest have been "in constant possession of this land from 1867 to the present ..." He claims through a chain of title dating back to 1867. Defendant relies on Section 37–1–21, N.M.S.A., 1978 Comp., and its provisions concerning possession by persons holding or claiming land by a conveyance, devise, grant,

etc. Thus reliance on open, continuous, notorious and adverse possession likewise does not appear to be asserted by defendant. Moreover, "no title to public lands can be obtained by adverse possession, laches, or acquiescence," *Sweeten v. United States Department of Agriculture, et al.,* 684 F.2d 679, 682 (10th Cir. 1982), and indeed § 2409a(g) specifically provides that "[n]othing in [§ 2409a] shall be construed to permit suits against the United States based upon adverse possession."

open, continuous, notorious and adverse possession for a number of years as fixed by the statute.[11] Section 2409a(f) provides only a bar against actions not commenced within 12 years of accrual of the action, "accrual" being defined as the date when the plaintiff or his predecessor in interest "knew or should have known of the claim of the United States."

In the district court's earlier Memorandum Opinion which had held Gammache's 1980 quiet title suit barred by § 2409a(f), the court based its limitations holding there on these facts (I R. 25–26):

> After reviewing the exhibits and attachments to both memoranda, the Court finds that the statute of limitations has run as to any possible quiet title action concerning the property which is the subject to this action. The property in question was deeded to the United States on December 31, 1934. The deed was recorded in the land records of both Sandoval County (on July 13, 1935), and Santa Fe County (on July 9, 1935). Moreover, on October 1, 1935, the United States Attorney General issued an opinion letter declaring that a valid title to the land in question had vested in the United States.

> Clearly, the plaintiff or his predecessor in title knew or should have known of the interest of the United States as early as 1935. Were even that notice not sufficient, however, there is a long series of correspondence beginning in 1944 and continuing into 1964 wherein defendant United States consistently asserted its claim to title in this property. The twelve year statute of limitations has

thus run long ago on any possible quiet title action on the tract in issue here. Thus, the bar of the statute was imposed solely on the basis of knowledge of the "claim" of the Government, and not on the basis of any theory akin to adverse possession.

It is true that Justice Holmes in *United States v. Chandler-Dunbar Co.*, 209 U.S. 447, 450, 28 S.Ct. 579, 580, 52 L.Ed. 881 (1908), stated that "statutes of limitation, with regard to land, at least, . . . generally are held to affect the right, even if in terms only directed against the remedy." When this statement is considered in connection with the type of statute involved there, however, we do not feel the statement is controlling here under a statute like § 2409a(f).

The statute involved in *Chandler-Dunbar* dealt with patents to land issued by the United States. The statute provided that Government suits to vacate or annul patents previously issued "shall only be brought within five years of the passage of this act." 209 U.S. at 450. In its suit to remove a cloud on title, the Government argued that the claim of the defendant to the islands and a strip of land, based on a patent from the United States, was defective because the patent was void; that being void, it "hence was no patent," 209 U.S. at 450, 28 S.Ct. at 580, and thus the five year limitation did not apply. Disagreeing, the Court reasoned that when the statute spoke of "any patent heretofore issued", it described the "purport and source of the document, not its legal effect." 209 U.S. at 450, 28 S.Ct. at 580. "This statute must be

---

11. Statutes of limitations governing title suits do commonly contain provisions for title to be obtained by adverse possession, coupled with the running of a limitations period. *See, e.g.,* New Mexico Stat.Ann. § 37–1–22 ("In all cases where any person . . . shall have had adverse possession continuously and in good faith under color of title for ten years of any lands . . . and no claim by suit in law or equity effectually prosecuted shall have been set up or made to the said lands . . . within the aforesaid time of ten years, . . . the person . . . so holding adverse possession . . . shall be entitled to keep and hold in possession such quantity of lands . . . and the person . . . so holding or keeping

possession . . . shall have a good and indefeasible title in fee simple to such lands. . . ."); 60 Okla.Stat.Ann. § 333 ("Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."). *See also* Colo.Stat. Ann. § 38–41–101; Kan.Stat.Ann. § 60–503; Utah Stat.Ann. § 78–12–7.1; Wyo.Stat.Ann. § 1–3–103. Title 28 U.S.C. § 2409a(f) does not contain provisions of the type found in these state statutes which deal with holding land by adverse possession and obtaining title thereto by prescription.

taken to mean that the patent is to be held good and is to have the same effect against the United States that it would have had if it had been valid in the first place." *Id.* The special terms of the statute thus caused it to be treated as one validating the patent, and for that reason affecting the right. Moreover, we have considered the cases cited in the *Chandler-Dunbar* opinion in connection with the statement that statutes of limitations affect the right with respect to land, even if in terms they are directed against the remedy. The two cases involving land (*Sharon v. Tucker,* 144 U.S. 533, 12 S.Ct. 720, 36 L.Ed. 532 (1892) and *Leffingwell v. Warren,* 67 U.S. 599, 17 L.Ed. 261 (1862)), both dealt with adverse possession. The remaining case, *Davis v. Mills,* 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067 (1904), concerned limitations on actions to enforce a special statutory liability of directors; however, the portion of the opinion cited again discusses adverse possession. *See* 194 U.S. at 457, 24 S.Ct. at 695. As we have explained in some detail, here the claim of the United States is not one grounded on adverse possession,[12] and § 2409a(f) is not a statute framed in terms like those which recognize prescriptive title based on adverse possession.

In sum, we cannot agree with the district court that the lapse of the 12 year limitation period not only barred the defendant's remedy but also vested title to the disputed land in the Government. Hence the summary judgment cannot rest on this ground.

### III

As discussed above, although we have some doubt as to whether the district court actually intended to rule in addition on the merits of the title dispute, we have considered the merits of that issue and whether it may independently support the summary judgment in favor of the Government. Our examination of the record has convinced us that the case is not ripe for summary judg-

ment on the merits, due to genuine issues of fact and ambiguities presented by the materials submitted by the parties. (I R. 32–97, 98–239).

■ Pursuant to Rule 56(c), F.R.Civ.P., summary judgment is proper only if it is apparent from the record that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Rule 56 standard is applicable to actions for declaratory judgment such as the case at bar. *See United States v. Fisher-Otis Co.,* 496 F.2d 1146, 1149 (10th Cir.1974). On appeal, we must consider the summary judgment motion in the same manner as did the district court because the trial court has no real discretion in determining whether to grant summary judgment. We do not examine the trial court's ruling under the clearly erroneous standard; rather, we apply the strict standard of the summary judgment rule. *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1377 (10th Cir.1980). If the movant's documents do not demonstrate the absence of a genuine issue of fact, summary judgment must be denied. Id. at 1383. A moving party must establish his right to a summary judgment as a matter of law, and beyond a reasonable doubt. *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33, 36 (10th Cir.1975).

■ In light of these principles we cannot agree that the Government established its right to a summary judgment. The record reveals genuine issues of material fact and ambiguities, precluding summary judgment. The United States claims title to the disputed real property through a chain of title going back to the decree of the court in a partition and quiet title action in *Trinidad Baca v. The Unknown Heirs of Jacinto Palaez,* No. 26 Slip Op. (N.M.Dist.Ct. July 17, 1913). The chain of title asserted by the Government thus derives from the *Trinidad Baca* proceedings, depending on the land in question having

---

**12.** The Government's complaint in the instant case alleged that defendant Gammache and M.H.G. Corporation "unlawfully occupy and use the subject lands ... and refuse to vacate

same, or to remove the improvements constructed thereon during their period of occupancy ..." (I R. 3).

been included in the partition order. There the court ordered a survey of the original La Bajada land grant, which included the disputed property, and based its partition order on the results of the survey. Excluded from the effect of the partition were all lands which had been occupied or cultivated for a period of ten years prior to the filing of the complaint in that proceeding. The survey and the order identified groups of these lands. The property in dispute here was not noted and identified as held in severalty and cultivated and was not specifically excepted from the effect of the partition order. Nevertheless, an affidavit submitted by defendant asserted that the surveyor, John H. Walker, came to the La Bajada area to survey the private tracts in the La Bajada grant but that due to certain ill feelings in the area Mr. Walker was not notified of Mr. Sixto Layva's tract and thus did not survey the tract in question.[13] Thus the disputed land was part of the property not intended to be affected by the partition order, if the facts asserted in the affidavits are established at trial and the partition order did not cover them. Defendant presented other affidavits to support the position that 6.56 acres of the land in dispute were in the possession of predecessors of Mr. Gammache from 1896 until conveyance to defendant Gammache in 1955. (I R. 69–71).

Furthermore, defendant argues that the *Trinidad Baca* partition order itself strengthens his position. The defendant asserts that the partition order recognized that not all of the lands held in severalty and excepted from the effect of the partition were identified in the survey and in the partition order. The order stated: "The court further finds that [most] the lands held in severalty at La Bajada are more fully set forth in the map and report ..." made by the surveyor. The judge in *Trinidad Baca* apparently wrote the bracketed

word "most", which appears in our record, (I R. 84, 134), into the partition order. There is another interlineation in the partition order three lines above the interlineation of the word "most." That interlineation appears to alter or extend the designation of occupied or cultivated lands excluded from the partition order by interlineating the reference "or at La Bajada." (I R. 84, 134).[14] The insertion of the word "most" does tend to strengthen the assertions in defendant's affidavits and indicates ambiguity and doubt concerning the effect of the partition decree on the disputed land, thus precluding summary judgment.

We have considered the Government's responsive arguments. The Government vigorously argues that there are weaknesses in the position of the defendant in attacking the Government chain of title and in defendant's position concerning the 1913 partition order in the *Trinidad Baca* case. These contentions do not, however, demonstrate that the Government was entitled to a summary judgment on this record, under the strict standards which control.

IV

For the reasons we have given, we must hold that the summary judgment rendered in favor of the Government was in error. The running of the 12 year limitation period of 28 U.S.C. § 2409a(f) did not divest defendant Gammache of any title he might have had to the disputed lands and vest it in the United States. Further, the record made does not justify a summary judgment on the merits of the title dispute. Without expressing any view as to the merits of the title dispute of the parties, we conclude that it cannot be determined by this summary judgment. Accordingly, the judgment is reversed and the cause is remanded for further proceedings.

13. Mr. Miguel Layva's affidavit asserted these facts "from my own personal knowledge." (I R. 68).

14. Both of these interlineations appear on the certified copy of the 1913 *Trinidad Baca* partition order introduced by the Government (I R.

134), as well as on the copy introduced by defendant Gammache. (I R. 84). Moreover the appointment of the three commissioners to make the partition was made by handwritten entries in the order. (I R. 143).