Leland M. KNAPP, Anna R. Knapp, Thomas E. Knapp, Theodore L. Knapp, Lois Stark, John H. Stark and Robert W. Stark, Plaintiffs–Appellees,

v.

The UNITED STATES of America, Cecil Andrus, Secretary of the Interior, and George L. Turcott, Director of the Bureau of Land Management, Defendants–Appellants.

No. 79–1023.

United States Court of Appeals, Tenth Circuit.

Argued July 9, 1980.

Decided Dec. 1, 1980.

Raymond N. Zagone, Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Washington, D. C., Charles E. Graves, U. S. Atty., and Sharon A. Lyman, Asst. U. S. Atty., Cheyenne, Wyo., Jacques B. Gelin and Anne S. Almy, Attys., Dept. of Justice, Washington, D. C., on brief), for defendants–appellants.

John W. Davis, Worland, Wyo. (Jeffrey A. Donnell, Worland, Wyo., with him on brief), of Davis, Donnell & Worrall, Worland, Wyo., for plaintiffs–appellees.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This is an action under the Quiet Title Act, 28 U.S.C. § 2409a, to quiet title against the United States in 48 acres of land in Wyoming. Plaintiffs are members of two families, the Knapps and the Starks, who claim as heirs of and successors in interest to a Mr. David Schoening. The Government also traces its interest through conveyances originating from Schoening. The district court found the suit timely filed and declared plaintiffs freeholders of the land, subject to a right–of–way in the Government for a stock driveway across the land. The Government has appealed, contending 28 U.S.C. § 2409a(f) time–bars plaintiffs' suit and thereby ousts the district court of subject matter jurisdiction. We agree and therefore reverse.

### Factual Background

In 1939, title to the land now in dispute lay in David Schoening. On August 17 Schoening conveyed to the United States an easement for a driveway that would permit passage by livestock. Within the next month the Civilian Conservation Corps erected a fence that enclosed a strip of roughly two acres. By its own terms the easement had a broad scope both as to use and land covered. But also by its terms, it looked to a pending land purchase and was to last only until those negotiations were completed.

On November 21, 1939, Schoening purported to convey by warranty deed and for a stated consideration of $100, lands described as:

"All that portion of the hereinafter described lands lying north of a meander line drawn parallel with and two (2) chains north of the north high water mark of the Badwater Creek; E ½ NE ¼ section 13, T. 38 N., R. 91 W., 6 P.M., *containing 20 acres more or less.*"

Rec., vol. III, Pl. Ex. 6 (emphasis added). The described lands do not contain 20 acres; they span roughly 48. And they substantially include the 2–acre strip fenced as a stock driveway.

Schoening's deed stated the grantee as the "Wyoming Grazing District Number Two." *See id.* Under the Taylor Grazing Act, 43 U.S.C. § 315 et seq., a "grazing district" is a geographical unit of administration established by the Secretary of Interior "to promote the highest use" of public lands. *Id.* Each "district" has its own advisory board of local stockmen. *Id.* § 315*o* –1. The advisory board, *inter alia*, offers advice and makes recommendations to the Secretary about "physical, economic, and other local conditions" in the district. *Id.*

On February 14, 1940, almost three months after Schoening's deed to the Wyoming Grazing District, the District's advisory board executed a deed that conveyed to the Secretary of Interior the land described in the Schoening deed. As already stated, that description covers roughly 48 acres. This deed as well as the Schoening deed were properly recorded under Wyoming law on February 14, 1940.

In apparent disregard of the deeds' description, Schoening and his successors continued to treat the 48 acres, except for the fenced stock driveway, as their own property. In 1958, an oil company representative encountered the deeds in the county records and alerted plaintiffs that some of the land they thought they owned appeared to belong to the Federal Government.

Plaintiffs promptly raised this matter with Mr. Rex Colton, District Land Manager of the Bureau of Land Management (BLM). In a July 7, 1958 letter they stated their view, which forms the basis for this lawsuit, that even though the deeds purport to convey more than the 2 acres fenced as a stock driveway, there was never any intent to transfer an interest in more than that 2–acre strip. The letter requests Mr. Colton's "efforts to clear up the title questions on this land." Rec., vol. III, Def. Ex. B to Pl. Ex. 86.

Colton responded by letter of July 11, 1958. After expressing his "personal opinion" that he agreed with plaintiffs' view, he said the matter would be referred to the legal staff of the BLM

"for the determination of steps necessary to clear the title of these lands. The only difficulty that I see at the present time is that in returning or deeding any land now carried on the county records as belonging to the Federal Government, it would have to be done under the present land laws which are not necessarily applicable in this situation. I know of no procedure where the government could deed land direct without following the land laws such as desert entry, homestead, small tract, etc. It may be necessary that some of these land laws be followed to acquire title by an individual."

Rec., vol. III, Def. Ex. C to Pl. Ex. 86. Shortly thereafter, Colton advised a member of the Knapp family that the entire matter had been referred to an Interior Department field solicitor. By letter in December 1958, Colton reported the solicitor's opinion that two steps would be "necessary for reconveying the land": a survey to accurately fix the area of the fenced driveway, and "a special act of Congress to actually reconvey the remaining land." Rec., vol. III, Def. Ex. E. to Pl. Ex. 86.

In the years after 1958, efforts to complete the two steps ran parallel. Plaintiffs contacted congressmen or congressional delegations, and at least two surveys were made between 1958 and 1971 that included the disputed land. The Government finally approved a survey in 1971. However, efforts with Congress proved unsuccessful. Plaintiffs filed this quiet title action August 24, 1977.

### The Statutory Bar

Originally the doctrine of sovereign immunity barred quiet title actions against the United States. *See, e. g., United States v. Turner,* 47 F.2d 86 (8th Cir. 1931); *Welch v. Hamilton,* 33 F.2d 224 (S.D.Cal.1929). *See also United States v. Brosnan,* 363 U.S. 237, 248 n. 11, 80 S.Ct. 1108, 1114 n. 11, 4 L.Ed.2d 1192 (1960). Enacted in 1972, the Quiet Title Act, 28 U.S.C. § 2409a, waives immunity to such suits:

"The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . . ."

*Id.* § 2409a(a). Congress, however, limited the waiver:

"Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."

*Id.* § 2409a(f).[1]

▮ As a condition to suit against the sovereign, the 12–year rule must be strictly construed in favor of the sovereign. *Stubbs v. United States*, 620 F.2d 775, 779 (10th Cir. 1980). Timeliness under subsection (f) is a jurisdictional prerequisite to suit under section 2409a. *See Grosz v. Andrus*, 556 F.2d 972, 975 (9th Cir. 1977); *Gendron v. United States*, 402 F.Supp. 46, 48 (E.D.Cal. 1974), *aff'd*, 524 F.2d 1154 (9th Cir. 1975) (per curiam).

The trial court accepted plaintiffs' allegation that the intent of all concerned in 1939 was to transfer an interest in only enough land for a stock driveway, and that the 48–acre description in the deeds was a mutual mistake of fact. It found that the grant of the easement from Schoening to the United States fully effected that intent. The 1939 and 1940 deeds to and from the Wyoming Grazing District were void, the court reasoned, because the District is a geographical area, not a legal entity with capacity to receive or convey title to land. In the court's view, this partly resolved the question whether plaintiffs had filed timely suit: since the void deeds never passed title, the Government never had a "claim" to which section 2409a(f) could apply. It concluded the Government acquired no more than a right–of–way for a stock driveway,

and title to the disputed land properly belongs to plaintiffs. Alternatively, the court found the suit timely because it held the 12–year period did not begin to run until 1972, when enactment of section 2409a conferred the right to sue. Alternatively still, if section 2409a(f) did apply, the Government's "claim" did not arise before 1971 when it approved the survey covering the disputed land because, the court concluded, that was the first time the Government definitively asserted an interest greater than a right–of–way.

▮ The trial court misconstrued section 2409a(f) in all three respects. First, we have recently rejected the argument that an action under section 2409a cannot accrue before Congress created the right in 1972 to bring such actions. *See Stubbs v. United States*, 620 F.2d at 780. The 12–year rule of section 2409a(f) applies retroactively. *See id.; Hart v. United States*, 585 F.2d 1280, 1284 (5th Cir. 1978), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *Grosz v. Andrus*, 556 F.2d at 975; *Hatter v. United States*, 402 F.Supp. 1192, 1194 (E.D.Cal.1975). By enacting the Quiet Title Act, Congress intended to permit retroactively only actions that accrued in the 12–year period preceding the Act's enactment. *See* H.R.Rep.No.1559, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4547, 4550. Thus no cause of action was created for any title claim that accrued earlier than 1960.

▮ Second, *Stubbs* rejects the argument that if the Government relies on a null deed, there is no section 2409a(f) "claim" to trigger the 12–year period. *See Stubbs*, 620 F.2d at 781. We pointed out there that the Quiet Title Act covers disputes in which "the United States claims an *interest*." *Id.* Whether the interest claimed amounts to legal title in the United States is irrelevant if it constitutes a cloud on the plaintiffs' title. *See Hatter*, 402 F.Supp. at 1194–95. The trial court's conclusion that the 1939

---

1. The jurisdictional counterpart to section 2409a is section 1346(f):

"The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

28 U.S.C. § 1346(f).

and 1940 deeds are nullities does not render section 2409a(f) inapplicable. Consequently, we need not decide whether that conclusion is correct.

 Finally, the trial court erred by holding that plaintiffs' action could not have accrued before 1971 when the Government finally approved a survey of the disputed land and thereby set forth a definitive title claim. The test for accrual under section 2409a(f) is when "the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(f). Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's. *Cf. United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (medical malpractice claim against Government accrues when plaintiff becomes aware of existence of his injury and its probable cause, not when he later learns of its legal significance).

 Plaintiffs concede, and the trial court found, that in 1958 plaintiffs learned of the Government's apparent interest when an oil company representative alerted them to what the 1939 and 1940 deeds reflected in the county records. Plaintiffs' correspondence with BLM official Colton made, or should have made, them aware that the Government did indeed claim an interest in land they believed theirs, and that only Congress could release that interest. Efforts to clear their title via congressional act is an indication they understood this. In view of plaintiffs' knowledge in

1958, we need not consider what Schoening, plaintiffs' predecessor in interest, knew or should have known. *See e. g., Gendron v. United States*, 402 F.Supp. at 47–48. Neither need we decide what notice, if any, the recorded deeds imparted. *See, e. g., Amoco Production Co. v. United States*, 619 F.2d 1383, 1387–89 (10th Cir. 1980). Plaintiffs' action accrued by 1958 and thus falls within the class of actions Congress intended to exclude when it enacted the Quiet Title Act.[2]

Our holding today does not settle plaintiffs' title dispute with the Government.[3] We hold only that under the time–bar of 28 U.S.C. § 2409a(f), the trial court should have dismissed this quiet title action for lack of subject matter jurisdiction.

Reversed.

---

2. The trial court blamed the Government for the plaintiffs' delay in bringing this action, finding that the Government encouraged plaintiffs' efforts to clear the cloud from their title from 1958 through 1971. But whatever the intent or opinions of individual government officials, only Congress had the power to release the Government's apparent interest, and plaintiffs were told this in 1958. Even assuming plaintiffs were lulled away from the courthouse steps, they were not prejudiced because the courthouse doors were simply not open to them until more than 12 years after 1958. During the entire 12–year period after 1958, plaintiffs

were encouraged to pursue what seemed the only practicable avenue available to them for clearing their title against the Government: an act of Congress.

3. We note, however, that to the extent plaintiffs' pleadings can be read as properly presenting a claim under the Tucker Act, 28 U.S.C. § 1346(a)(2), for a taking of property without just compensation, the district court does not have jurisdiction because the pleadings themselves indicate the claim exceeds $10,000. It must, therefore, be asserted in the Court of Claims. *See id.*