### The STATE OF UTAH, By and Through its DIVISION OF STATE LANDS, Plaintiff,

### v.

### UNITED STATES of America; James G. Watt,* Secretary of the United States Department of the Interior; Frank Gregg, Director of the Bureau of Land Management within the Department of the Interior, and Paul L. Howard, Utah State Director of the Bureau of Land Management, Defendants.

### Civ. No. C 79–0302J.

United States District Court,
D. Utah, C.D.

April 15, 1983.

---

*One (1) 1980 Stapleton Pleasure Vessel,* 575 F.Supp. 473 (S.D.Fla.1983).

* Successor to Cecil D. Andrus.

Dallin W. Jensen and Michael M. Quealy, Salt Lake City, Utah, for plaintiff.

Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, Steven A. Herman and Lawrence Puckett, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

Plaintiff, the State of Utah, brought this action to enjoin the defendants, the United States of America and officers of the Department of Interior, from interfering with Utah's ownership and management of the bed of Utah Lake, located in Utah County, Utah. Each of the parties claims to be the owner of the lakebed. Each has filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking a holding in its behalf. The essential facts are not in dispute. The Court heard arguments on the motions June 10, 1982. Joe Anderson, Esq. and Steven A. Herman, Esq. represented the United States. Richard L. Dewsnup,** Esq., Dallin W. Jensen, Esq. and Michael M. Quealy, Esq. appeared on behalf of the State of Utah. After careful consideration

** During the pendency of this decision, Richard L. Dewsnup, Solicitor General of the State of Utah, passed away. The Court would like to acknowledge the loss of Mr. Dewsnup, a skilled and memorable advocate.

of the motions, the arguments made and briefs submitted, this Court issues the following Memorandum Opinion and Order.

The parties are in dispute regarding the procedure by which the case comes before this Court. The United States maintains that the action is one to determine which party has the superior claim to title to the bed of Utah Lake. According to the United States, the action is governed by the Quiet Title Act, which provides, in part:

The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest other than a security interest or water rights.

28 U.S.C.A. § 2409a(a) (1978). Although Utah relies on the Quiet Title Act as an alternative basis for jurisdiction, it asserts that the action is primarily for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201 (1982), and that this Court has federal question jurisdiction over the action. 28 U.S.C. § 1331 (1966). Utah maintains that it seeks only "a legal interpretation of the scope and effect of the 1889 Withdrawal Order on Utah Lake"[1] and that it does not seek "to resolve any of the claims of the private land owners surrounding Utah Lake."[2]

## I. DECLARATORY JUDGMENT

■ Utah asserts that the current action is one for declaratory judgment. Under that concept, the United States argues an action will not lie against it because it has not consented to be sued—it has not waived its "sovereign immunity". The Declaratory Judgment Act alone cannot overcome the jurisdictional bar of sovereign immunity. *E.g., Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950); *Bussey v. Harris,* 611 F.2d 1001, 1005 n. 7 (5th Cir. 1980); *Fidelity & Casualty Co. v. Reserve Ins. Co.,* 596 F.2d 914, 916 (9th Cir.1979); *Cook v. Arentzen,* 582 F.2d 870, 875 (4th

Cir.1978). Utah does not stop with the Declaratory Judgment Act. In addition, it relies on the Administrative Procedure Act, (APA), as the statute which provides the necessary consent and under which the United States is subject to suit.[3] Section 702 of the APA provides, in part, that:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States ...

5 U.S.C.A. § 702 (1977). There is some conflict over the scope of the waiver contained in § 702. In *Watson v. Blumenthal,* 586 F.2d 925, 932 (2d Cir.1978), the Court of Appeals for the Second Circuit held that § 702 "did not remove the defense of sovereign immunity in actions under § 1331 [federal question jurisdiction]." The *Watson* court found that § 702 does not waive immunity in "nonstatutory" review of agency action. An action under § 1331 is "nonstatutory" in the sense that it is not brought under a statute that specifically provides for agency review.

■ The Court of Appeals for Third Circuit rejected the *Watson* analysis holding that § 702 waives sovereign immunity in "nonstatutory", as well as statutory review of agency action. *Jaffee v. United States,* 592 F.2d 712, 718–19 (3d Cir.1979). The Court of Appeals for the Tenth Circuit cited the *Jaffee* opinion favorably in *Carpet & Linoleum & Resilent Tile, Etc. v. Brown,* 656 F.2d 564, 567 (10th Cir.1981). In *Carpet & Linoleum,* the Court of Appeals for this circuit held that § 702 waived sovereign immunity in a mandamus action

---

**1.** Memorandum in Support of Utah's Cross-Motion for Summary Judgment, 104.

**2.** *Id.*

**3.** Complaint at 3.

grounded in federal question jurisdiction. Similarly, in the case at bar, Utah argues that § 702 waives immunity for a declaratory judgment action in which subject matter jurisdiction also is based on a federal question. Therefore, we find that a declaratory judgment action will lie against the United States in the present dispute.

## II. QUIET TITLE

■ Defendant, the United States, argues that the action is one under the Quiet Title Act, 28 U.S.C.A. § 2409a(a) (1978). Defendant claims that although the Act waives sovereign immunity, actions under it must be brought within the specified limitations period. Section 2409a(f) of the Quiet Title Act provides:

Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C.A. § 2409a(f) (1978). Defendant maintains that state authorities were aware of the United States "claim" to the bed of Utah Lake in 1963, more than twelve years before the action was brought[4] and thus the action is barred. In that year a series of letters were written to the Governor of Utah discussing the possibility of a federal claim to the lake bed. On February 21, 1963, the United States Secretary of Interior, Stewart Udall, wrote a letter to Governor George Clyde in which he stated that the bed of Utah Lake was segregated as a reservoir site in 1889 and that "it would appear that lands beneath navigable waters reserved by the United States prior to

statehood, for public uses or purposes, would not pass to the state.[5]" The State of Utah argues, however, that Secretary Udall's August 15, 1963 letter is more reflective of the federal position. In that letter the Secretary of Interior stated, "We are not prepared to state with finality whether title to the bed of Utah Lake has or has not passed to the State of Utah.[6] The next correspondence on which the United States bases its argument that Utah "should have known" of the federal "claim" to the lake bed is a letter of the local Regional Solicitor written in January, 1965. Stuart McMaster, Regional Solicitor of the Bureau of Reclamation, wrote an opinion addressed to the Regional Director in which he stated:

It is our opinion that the designation and reservation of Utah Lake as a reservoir site on April 11, 1889, pursuant to the Act of October 2, 1888, and prior to statehood in 1896, precluded the state's sovereign rights from attaching to lands underlying such navigable waters.[7]

The United States contends that the McMaster report put the state on notice that the federal government claimed an interest in the bed of Utah Lake. Utah, however, emphasizes that the report was sent to the Regional Director of the Bureau of Reclamation rather than to the Utah Governor.[8] Further, McMaster recommended that "when you have determined the area actually needed for the Central Utah Project, you should eliminate from the reservation and restore any excess lands now withdrawn and reserved, *and notify the state of the position taken by the United States.*[9]" Although the Governor's office was in possession of a copy of the McMaster report, there is no indication

---

4. This action was filed May 22, 1979.

5. Letter from Secretary of Interior to Governor of Utah (February 21, 1963) (discussing Central Utah Project).

6. Letter from Secretary of Interior to Governor of Utah (August 15, 1963) (discussing 1889 withdrawal).

7. Letter from Regional Solicitor, Stuart McMaster, to Regional Director, Bureau of Reclama-

tion, Salt Lake City, Utah (January 26, 1965) (discussing reservation and withdrawal of Utah Lake as a permanent reservoir site under the Act of October 2, 1888) at 5–6.

8. Governor George Clyde was succeeded by Governor Calvin Rampton in 1965.

9. *Id.* at 7 (emphasis added).

that notice was given of "the position taken by the United States." Nor is there evidence that the United States publically took the position suggested by McMaster, at that time.

The Court of Appeals for the Tenth Circuit recently interpreted the limitations section of the Quiet Title Act, stating:

> The operative words of the statute— "should have known" import a test of reasonableness. Only if it was unreasonable for the [plaintiff] to have failed to discover the *claim* of the United States should the limitations provision of § 2409a(f) become operative.

*Amoco Production Co. v. United States,* 619 F.2d 1383, 1388 (10th Cir.1980) (emphasis added). Under the facts of the present dispute, the last correspondence from the Secretary of Interior to the Governor of Utah stated that the United States was unwilling to say that it owned the lake bed. The United States had then not yet stated a claim. The McMaster report was an inter-agency memorandum suggesting the grounds by which the United States could claim an interest in the bed of the lake. There is no indication that the Secretary of Interior changed his position in reliance on the report. Further, there is no evidence that defendants followed McMaster's advice and notified "the state of the position taken by the United States." This circuit has held that for the statute of limitations under the Quiet Title Act to run "[a]ll that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Knapp v. United States,* 636 F.2d 279, 283 (10th Cir.1980). Secretary Udall's August 15, 1963 letter indicates that the United States was uncertain whether it claimed an interest adverse to that of the state. The McMaster report analyzes a method by which the United States could claim an interest ad-

verse to the state's if it so desired. There is no indication that it did so in 1965. Further, in *Knapp,* the Court of Appeals discounted the reliability of opinions given by individual officials as follows:

> But whatever the intent or opinions of individual government officials, only Congress had the power to release the Government's apparent interest, and plaintiff's were told this in 1958.

636 F.2d at 283 n. 2. Likewise, the State of Utah cannot be expected to rely on a report by the local Regional Solicitor of the Bureau of Reclamation to the Regional Director of that department as the official statement of United States policy. This is particularly true when the United States Secretary of Interior had last informed the Utah Governor that the United States was not ready to take a position on the issue. This Court holds that the action is timely [10] under the Quiet Title Act, 28 U.S.C.A. § 2409a *et seq.*[11]

Plaintiffs insist that this suit is one for declaratory judgment while defendants maintain that it is a Quiet Title action. Because either theory gives this Court the opportunity to examine the merits of the case, it is unnecessary to resolve that dispute.

## III. THE LAKE BED

### A. 1889 Withdrawal

■ Congress authorized the withdrawal of lands in the arid West for reservoir sites in the Sundry Appropriations Act of 1888, which provides:

> —[There is appropriated] for the purpose of investigation, the extent to which the arid region of the United States can be redeemed by irrigation, and the segregation of the irrigable lands in such arid region, and for the selection of sites for

---

**10.** The McMaster report was written in 1965. This action was commenced 14 years later in 1979. There is nothing to suggest that plaintiff "should have been aware" of the United States "claim" between 1965 and 1967.

**11.** Plaintiff argues that the limitations provision of the Quiet Title Act, 28 U.S.C.A. § 2409a(f)

(1978), does not run against the states. A petition for certiorari has been filed with the United States Supreme Court to consider that issue. *Block v. North Dakota,* 671 F.2d 271 (2d Cir. 1981), (petition filed June 1982). We need not reach that question here, however, because we find that plaintiff's action is timely.

reservoirs and other hydraulic works necessary for the storage and utilization of water for irrigation and the prevention of floods and overflows ... the sum of $100,000.... And all the lands which may hereafter be designated or selected by such United States surveys for sites for reservoirs, ditches, or canals for irrigation purposes and all the lands made susceptible of irrigation by such reservoirs, ditches, or canals are from this time henceforth, hereby reserved from sale as property of the United States, and shall not be subject after the passage of this act, to entry, settlement, or occupation until further provided by law: *Provided,* That the President may at any time in his discretion by proclamation open any portion or all of the lands reserved by this provision to settlement under the homestead laws.

Act of October 2, 1888 (25 stat. 526). Pursuant to that Act, on April 6, 1889, John Wesley Powell, the Director of the United States Geological Survey (USGS) selected Utah Lake as a reservoir site. In a letter to the Secretary of Interior, Powell stated: "I have the honor to report that *the site of Utah Lake* in Utah County in the Territory of Utah is hereby selected as a reservoir site, *together with all lands situate[d] two statute miles of the border of said lake at high water.*"[12] As a result of that withdrawal, the USGS made a survey to more accurately describe the reserved area by legal subdivisions. In its annual update to the Secretary of Interior in 1889, the USGS included a report of Captain C.E. Dutton, which stated:

> In April Mr. Newell was sent to Utah to make certain examinations of Utah Lake with reference to its capacity for a reservoir site and to furnish the specifications for its withdrawal as such under the law, so far as *the lands covered* or

overflowed *by it* or the lands bordering upon it *were still public lands.*[13]

In its next report, the USGS discussed the results of its study of the area reserved by the Utah Lake withdrawal. The report stated that the USGS survey "was made to include not only the bed [of Utah Lake] but the lowlands up to mean high water", as well.[14] The language used in the correspondence and documents surrounding the 1889 withdrawal expressly include the bed of Utah Lake. Because these documents reflect the involved agency's contemporaneous interpretation of the scope of the withdrawal, they are entitled to deference, *e.g., Choctaw Nation v. Oklahoma,* 397 U.S. 620, 631, 90 S.Ct. 1328, 1334, 25 L.Ed.2d 615 (1969); *Udall v. Tallman,* 380 U.S. 1, 4–6, 85 S.Ct. 792, 795–96, 13 L.Ed.2d 616 (1965), and this Court now finds that the United States withdrew the bed of Utah Lake as part of the 1889 reservoir site selection.

### B. Equal Footing

The state contends that even if the 1889 withdrawal included the lake bed, title passed to Utah at the time of statehood[15] under the Doctrine of Equal Footing. That doctrine provides that, like the original states which retained title to the beds of their navigable waters, all new states are entitled to the beds of navigable waters within their boundaries. *See, Montana v. United States,* 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493 (1981). In that way the new states are said to be on "equal footing" with the original states. The Equal Footing Doctrine, however, is not without exception. The United States Supreme Court examined those exceptions in *United States v. Holt Bank,* 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465 (1926), stating:

---

**12.** Letter from Director of United States Geological Survey, to U.S. Secretary of Interior (1889) (discussing Utah Lake withdrawal) (emphasis added).

**13.** Tenth Annual Report of the United States Geological Survey to the Secretary of Interior 1888–89, Part II, at 63 (emphasis added).

**14.** Eleventh Annual Report of the United States Geological Survey to the Secretary of Interior 1889–90, Part II, at 2.

**15.** Utah became a state on January 4, 1896.

It is settled law in this country that lands underlying navigable waters within a state belong to the state in its sovereign capacity and may be used and disposed of as it may elect, subject to the paramount power of Congress to control such waters for the purposes of navigation in commerce among the states and with foreign nations, *and subject to the qualification that where the United States after acquiring the territory and before the creation of the state,* has granted rights in such lands by way of performing international obligations, or effecting the use or improvement of the lands for purposes of commerce among the states and with foreign nations, *or carrying out other public purposes appropriate to the objects for which the territory was held, such rights are not cut off by the subsequent creation of the state,* but remain unimpaired, and the rights which otherwise would pass to the state are restricted or qualified accordingly.

*Id.* at 54–55, 46 S.Ct. at 198–99 (emphasis added) (citations omitted). *See also, Montana v. United States,* 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493 (1981); *United States v. Anchorage, Alaska,* 437 F.2d 1081, 1085 (1971); *United States v. Alaska,* 423 F.2d 764, 768 (9th Cir.), *cert. denied,* 400 U.S. 967, 91 S.Ct. 363, 27 L.Ed.2d 388 (1970). The withdrawal of Utah Lake was made "after acquiring the territory and before the creation of the state" for the carrying out of "public purposes appropriate to the objects for which the territory was held." Those purposes include irrigation for the benefit of future settlers of the arid West. Under these circumstances, the United States' title in the area was "not cut off by the subsequent creation of the state." Utah's arguments to the contrary are not persuasive.

### C. Submerged Lands Act

[7] The state further asserts that it obtained title to the bed of Utah Lake

through the Submerged Lands Act, 43 U.S.C.A. §§ 1301 *et seq.* (1964). In that Act, Congress relinquished the title and claims of the United States to land beneath the navigable waters within the boundaries of the states [16] and declared title and ownership of the land in the respective states.[17] Like the Doctrine of Equal Footing, the Submerged Lands Act is limited in its application. Section 1313 provides that:

> There is excepted from the operation of section 1311 of this title—
>
> (a) all tracts or parcels of land together with all accretions thereto, resources therein, or improvements thereon, title to which has been lawfully and expressly acquired by the United States from any State or from any person in whom title had vested under the law of the State or of the United States, and all lands which the United States lawfully holds under the law of the State; all lands expressly retained by or ceded to the United States when the State entered the Union (otherwise than by a general retention or cession of lands underlying the marginal sea); . . . .

43 U.S.C.A. § 1313(a) (1964). Title to the bed of Utah Lake was expressly reserved by the United States in 1889,[18] seven years before Utah became a state. The Court of Appeals for the Ninth Circuit discussed the application of the Submerged Lands Act to a similar situation in *United States v. Alaska,* 423 F.2d 764 (9th Cir.), *cert. denied,* 400 U.S. 967, 91 S.Ct. 363, 27 L.Ed.2d 388 (1970). In the *Alaska* case, the Court of Appeals held that the Act had no effect on a reservation by the United States made prior to statehood. *Id.* at 768. The Ninth Circuit based its holding on the language of the Act which specifically excluded "all lands expressly retained by or ceded to the United States when the state entered the Union. . . ." The present litigation also involves land retained by the United States before statehood. Therefore, the bed of Utah Lake is excluded from the application

---

**16.** 43 U.S.C.A. § 1311(b)(1) (1964).

**17.** *Id.* at § 1311(a)(1).

**18.** See *supra,* Part IIA.

of the Submerged Lands Act, by § 1311(a), and title to it remains in the United States. Only Congress can relinquish the federal claim to the lake bed.

These determinations are as much a recital of history as they are legal determinations. The historic documents speak of what took place. This Court cannot simply overlook what they say. Congress, and Congress alone, may deal with the transfer of lands which have been reserved. It is to that forum the state may look if longed-for ownership is considered essential.

Based on the foregoing, plaintiff's motion for Summary Judgment is DENIED and defendant's motion for Summary Judgment is GRANTED.