**Robert FADEM; Mary O. Fadem, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–56404.

United States Court of Appeals, Ninth Circuit.

Submitted March 10, 1994 *.

Memorandum filed June 22, 1994.

Memorandum Withdrawn Oct. 20, 1994.

Decided April 3, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Robert S. Fadem and Mary O. Fadem, San Diego, CA, in pro per.

D. Michael Waltz, Asst. U.S. Atty., San Diego, CA, for defendant-appellee.

Before BRIGHT **, WIGGINS and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

Robert and Mary Fadem (the Fadems) filed suit under the Quiet Title Act (QTA), 28 U.S.C. § 2409a, challenging the United States' claim to real property in San Diego County, California. They appeal the district court's dismissal of the case which held that the Fadems' claim was time-barred; equitable tolling does not apply to the QTA; and the Fadems had notice of the "contours" of the Government's claim. We reverse and remand, holding that the doctrine of equitable tolling applies to the QTA and that the "contours" doctrine is limited.[1] Thus, depending on the facts as determined by the district court on remand, the Fadems may have a viable claim under the QTA.

---

** Hon. Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. We previously held in *Fadem v. United States,* 42 F.3d 533, 535 (9th Cir.1994), that we had jurisdiction to hear the Fadems' appeal in this case and two other cases which were resolved in an unpublished disposition.

## FACTS AND PROCEDURAL BACKGROUND

The Fadems are the owners of a large tract of high desert land in San Diego County, California. This land is located in Section 9 of Township 13 South, Range 7 East, San Bernardino Meridian. The United States owns property in Section 10 which is adjacent to and east of the Fadems' property. Thus, the boundary between the Fadems and the United States is the line between Sections 9 and 10, and its disputed location gave rise to this suit.

The Fadems allege they have always had a good faith belief the boundary between Sections 9 and 10 was marked by an accepted historical monument, a redwood post. However, the history of the property's use by the Fadems and by the Bureau of Land Management (BLM), which manages the United States' property, does not clearly support the Fadems' allegation. Two incidents occurring in the 1960s are significant in determining whether the Fadems had notice of the Government's claim; they include a dispute over a BLM permit for a reservoir and the BLM's construction of a road.

In 1963, the Fadems applied for a permit from the BLM for a reservoir. However, the reservoir was located approximately 300 feet west of the redwood post which the Fadems allege marked the eastern boundary of their property. If the Fadems indeed own all the property up to the redwood post, then no permit for the reservoir would have been necessary. In accord with their alleged belief that they own all the property up to the redwood post, when the BLM requested that the Fadems renew the reservoir permit in 1968, they refused.

As a result of this refusal, the Fadems exchanged correspondence with the BLM, which finally acknowledged in a letter dated October 30, 1970, that there was a legitimate boundary dispute. The BLM agreed to conduct a survey to determine the exact location of the line between Sections 9 and 10 before requiring the Fadems to renew their permit. The letter stated that:

> [The Assistant Secretary of the Interior] concluded that a question of land status had been sufficiently raised by your correspondence to suspend the matter pending a cadastral survey of the section line common to section 9 and 10. If an official survey confirms the location of the reservoir on public land, you will be required, following notification, to secure a right-of-way as you were requested in 1968.

Apparently, this survey was completed in 1970, but not approved until 1980. According to the survey, the line between Section 9 and Section 10 was located approximately 200 feet west of the reservoir. As a result, the Government claims title to the entire 500 feet of land between the line established by the survey and the redwood post.[2] The Fadems claim they did not find out about the survey results until after they filed a conversion action against the Government in December 1983, alleging thefts by BLM employees of culverts and culvert connectors from the Fadems' ranch. However, the Fadems may have had some notice of the survey in 1981 due to a "passing remark" of a BLM employee.

Also, sometime in the mid–1960s, the BLM constructed a road which extended an existing road across the eastern section of the property. Although the exact date of this construction is unclear, it may have given the Fadems notice of the Government's claim at least to the eastern section and certainly to a right of way across this section.

Finally, in February 1988, the Fadems filed suit against the Government pursuant to the QTA challenging its claim to the disputed property. The district court granted the Government's motion for dismissal, holding that, with regard to the eastern section of the disputed land, the Fadems had notice for over twelve years prior to the filing of the suit, and thus, their claim was barred by the statute of limitations. *See* 28 U.S.C. § 2409a(g). Further, it held that the doctrine of equitable tolling did not apply under

---

2. For the purposes of this opinion, it is helpful to refer to the land in dispute in two separate sections. We will refer to the 300 feet east of the reservoir up to the redwood post as the "eastern section" and to the 200 feet west of the reservoir up to the survey line as the "western section."

the QTA. With regard to the western section of disputed land, the district court held that the Fadems had notice of the "contours" of the United States' claim, and thus, a suit challenging title to this section was also barred.

## DISCUSSION

### A. *Standard of Review*

■ The district court's dismissal on statute of limitations grounds presents a question of law reviewed *de novo. Washington v. Garrett,* 10 F.3d 1421, 1428 (9th Cir.1993).

### B. *Equitable Tolling and the QTA*

■ "Under the [QTA], the United States, subject to certain exceptions, has waived its sovereign immunity [permitting] plaintiffs to name it as a party defendant in civil actions to adjudicate title disputes involving real property in which the United States claims an interest." *Block v. North Dakota,* 461 U.S. 273, 275–76, 103 S.Ct. 1811, 1813–14, 75 L.Ed.2d 840 (1983) (footnote omitted). The QTA provides "the exclusive procedure by which a claimant can judicially challenge the title of the United States to real property." *Id.* at 276–77, 103 S.Ct. at 1814. Claims brought pursuant to the QTA are subject to a twelve-year statute of limitations:

> Any civil action under this section ... shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g).

In *McIntyre v. United States,* 789 F.2d 1408 (9th Cir.1986), we held that this statute of limitations was "a jurisdictional prerequisite" and that "equitable estoppel or tolling [could not] be used to circumvent the Act's 12–year statute of limitations." *Id.* at 1411. However, we now hold that this rule in *McIntyre* was overruled by the Supreme Court's subsequent decision in *Irwin v. De-*

*partment of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

■ In *Irwin,* the Supreme Court addressed the issue of whether the plaintiff's claim was barred by 42 U.S.C. § 2000e–16(c), requiring a civil suit under Title VII to be filed within 30 days of receipt of the Equal Employment Opportunity Commission's right-to-sue letter. *Id.* at 92, 111 S.Ct. at 455. It held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so." *Id.* at 95–96, 111 S.Ct. at 457. Although the Court in *Irwin* was addressing a claim under Title VII, it intended to create a general rule that equitable tolling was a defense to all federal statutes of limitations, unless Congress provided otherwise. *Id.; see also Goodhand v. United States,* 40 F.3d 209, 213 (7th Cir.1994); *Glarner v. United States, Dep't of Veterans Admin.,* 30 F.3d 697, 701 (6th Cir.1994); *Long v. Frank,* 22 F.3d 54, 58 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995).

The Government offers several arguments challenging the applicability of equitable tolling to the QTA's statute of limitations. All of its arguments are premised on the assertion that the presumption of equitable tolling established by *Irwin* is rebutted because Congress provided that equitable tolling does not apply to the QTA's statute of limitations. We reject each of the Government's arguments.

■ First, the Government relies on *Block,* 461 U.S. at 273, 103 S.Ct. at 1813, to argue that the QTA's statute of limitations is jurisdictional. In *Block,* the Court held that if a suit under the QTA is time-barred by the statute of limitations, then federal courts have "no jurisdiction to inquire into the merits." *Id.* at 292, 103 S.Ct. at 1823. Similarly, the Court in *United States v. Mottaz,* 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986), held that "[w]hen the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *Id.* at 841, 106 S.Ct. at 2229. " '[A] statute of limitations ... constitutes a condition on the waiver of sover-

eign immunity,'" and thus, defines jurisdiction. *Id.* (quoting *Block*, 461 U.S. at 287, 103 S.Ct. at 1820). However, the Court in *Irwin* reasoned that "making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." 498 U.S. at 95, 111 S.Ct. at 457. Thus, as this court has previously noted, the Court in *Irwin* "held that federal statutory time limitations on suits against the government are *not* jurisdictional in nature." *Garrett*, 10 F.3d at 1437 (emphasis added) (citing *Irwin*, 498 U.S. at 89, 111 S.Ct. at 454). Consequently, we hold that the statements in *Block* and *Mottaz* that the QTA's statute of limitations is jurisdictional in nature have no continuing validity after the Court's decision in *Irwin.*

Second, the Government argues the legislative history of the QTA discloses a congressional intent to impose a twelve-year statute of limitations without possibility of equitable tolling. Again, the Government relies on the Supreme Court's decision in *Block.* In *Block*, the Court rejected North Dakota's argument that it could maintain an "officer's suit" to challenge the United States' claim to portions of the bed of the Little Missouri River. Focusing on the legislative history, the Court held that the QTA was "the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block*, 461 U.S. at 286, 103 S.Ct. at 1819. The Court also stated that "[t]he legislative history is clear that Congress intended to foreclose totally any suit on claims that accrued more than 12 years prior to the effective date of the QTA." *Id.* at n. 23. However, we construe this language as referring to the Court's conclusion that officer's suits could not be used to circumvent the exclusive remedy of the QTA, not as precluding the availability of equitable tolling.

The Government also relies directly on the legislative history of the QTA. It argues the original Senate Report referred to the proposed QTA as jurisdictional and stated that "[i]n no way would it alter the substantive rules of law prevailing in actions against the Government." S.Rep. No. 92–575 (Dec. 10, 1971). However, a statement that the QTA was not intended to alter substantive rules of law says nothing about the effect of a statute of limitations, which is traditionally regarded as a procedural bar to an action and does not directly affect underlying rights. *See Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) ("[A]s a matter of constitutional law ... statutes of limitation go to matters of remedy, not to destruction of fundamental rights.").

The Government, relying on the House Report, also argues that legislative history indicates the twelve-year statute of limitations was intended to prevent stale claims. This report states that "the period is fixed ... so that the government will not have to defend against [stale] claims," and that the statute of limitations "will make a reasonable provision for the bulk of existing controversies." H.R.Rep. No. 1559, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4547, 4550–51. However, this language indicates nothing more than Congress imposed the QTA's statute of limitations for the usual purpose, namely, to limit stale claims.

In sum, neither the legislative history nor the Court's decision in *Block* precludes application of equitable tolling to suits brought pursuant to the QTA. Thus, we hold that the doctrine applies to the QTA's statute of limitations. Because the district court held otherwise, it never had the opportunity to consider whether equitable tolling should apply to the Fadem's QTA claim. On remand, it should make that determination.

## C. The "Contours" of the Government's Claim

The Fadems' only apparent notice of the Government's claim to the property in question included the reservoir permit dispute and the road construction. Both of these incidents related solely to the eastern section of the disputed property. Notice that the Government claimed the western section did not occur until the survey was approved in 1980. However, the district court, relying on *Knapp v. United States*, 636 F.2d 279 (10th Cir.1980), held that the Fadems' entire QTA claim was time-barred because they had notice of the "contours" of the Government's claim.

In *Knapp*, the plaintiffs brought suit pursuant to the QTA challenging the United

States' claim to a forty-eight acre parcel of land. Although the land had been transferred to the United States pursuant to a deed filed in 1939 which described the entire forty-eight acres, the plaintiffs alleged that the deed's description was a mutual mistake of fact and that the deed actually intended only to transfer enough land for an easement. *Id.* at 282. The district court accepted this allegation as true and concluded that the United States' claim to more than the easement did not arise until 1971 when it approved a survey covering the disputed land. *Id.* The Tenth Circuit reversed the district court. It noted that a claim under the QTA accrues when a plaintiff knew or should have known of the United States' claim, but it held that "[k]nowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Id.* at 283.

The district court in this case also relied on *Park County, Montana v. United States,* 626 F.2d 718 (9th Cir.1980), *cert. denied,* 449 U.S.. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981), to conclude the Fadems had notice of the Government's entire claim. In *Park County,* the Forest Service placed a sign and rock barrier across a right-of-way, prohibiting motor vehicle traffic. *Id.* at 720–21. The claimants argued this sign only gave it notice of the United States' title claim to the road extending beyond the sign. However, we rejected this argument, holding that notice of the United States' claim to a section of the right-of-way "should have put the [claimants] on constructive notice and alerted them to make reasonable inquiry as to the remainder of the purported right-of-way since the remainder would have little or no remaining utility if it were severed." *Id.* at 721 n. 6.

■ Although we agree that precise knowledge of the entirety of the United States' claim is not necessary in order for a claimant to have notice of that claim, we hold that application of the "contours" doctrine established by *Knapp* is improper in this

case. In *Knapp,* the 1939 deed to the United States described the entire forty-eight acres in dispute. Even though the claimants alleged the deed was based on a mutual mistake, it did give them notice that the United States could potentially claim a larger interest than an easement; the extent of a possible federal claim was dictated by the terms of the deed. Conversely, in this case, until the Government approved the survey, the Fadems knew only that the Government claimed title to the eastern section. There was no evidence, such as the deed in *Knapp,* to give the Fadems notice the Government would assert a claim to the western section. Likewise, *Park County* is distinguishable from this case because, unlike a right-of-way which would have no utility if severed, the utility of the western section is not injured by the United States' possession of the eastern section.

No investigation by the Fadems prior to the approval of the survey in 1980 would have disclosed the United States' claim to the western section of the disputed land because the United States did not know that it had a claim to that strip until the survey was approved. Therefore, we hold that, at least until approval of the survey in 1980, the Fadems did not have constructive notice of the Government's claim to the western section.

The judgment of the district court is REVERSED and the case REMANDED for further proceedings. No costs allowed.