WESTERN SHOSHONE NATIONAL, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 03:04CV0702LRH(VPC).

United States District Court, D. Nevada.

Jan. 17, 2006.

National Council and South Fork Band's motions (# 57).

Albert A. Foster, Jr., Dillingham & Murphy LLP, Washington, DC, Jeffrey M. Herman, Herman & Mermelstein, Aventura, FL, Robert R. Hager, Treva J. Hearne, Hager & Hearne, Reno, NV, for Plaintiffs.

Edward J. Passarelli, U.S. Environment and Natural Resources Division, Washington, DC, Gregory W. Addington, U.S. Attorney's Office, Reno, NV, for Defendant.

## ORDER

HICKS, District Judge.

Presently before this court is the defendant United States of America's (hereafter the "United States") motion to dismiss the second amended complaints filed in this matter (# 50[1]). Plaintiffs Western Shoshone National Council, Raymond Yowell, Allen Moss, Joe Kennedy, John Wells, Carrie Dann, Johnny Bobb, Benny Riley and the Timibisha Shoshone Tribe (collectively "Western Shoshone National Council") have opposed (# 52) the motion to dismiss, or in the alternative strike, their second amended complaint (# 46). Plaintiffs South Fork Band, Winnemucca Indian Colony, Dann Band, Te–Moak Tribe of Western Shoshone Indians, Battle Mountain and Elko Band (collectively "South Fork Band") have opposed (# 54) the motion to dismiss their second amended complaint (# 45). The United States has filed a reply covering both Western Shoshone

## FACTUAL AND PROCEDURAL BACKGROUND

The present dispute arises out of a long standing legal battle over the rights of the Shoshone people to lands they claim to have owned which cover most of eastern Nevada as well as portions of California, Idaho and Utah. In the present incarnation of this battle, more than 60 million acres are in dispute. The boundaries of this land are defined by the Treaty of Ruby Valley; negotiated and agreed to by the United States and the northwestern bands of the Shoshone Indians in 1863 and ratified by Congress in 1864.

However, through gradual encroachment by American settlers, much of what used to be Shoshone land was coopted for use by the United States. In 1951, the claim which became the progenitor of the current lawsuit was filed with the Indian Claims Commission[2] ("ICC"). That lawsuit claimed title to a large portion of land which included 24 million acres that fell within the boundaries of the Treaty of Ruby Valley. In that litigation, the representatives of the Shoshone Indians, the Te–Moak Band (a plaintiff in the present lawsuit), alleged ownership of the disputed property based on aboriginal title (a claim of possession of the land since time immemorial) and on ownership of the fee title based on the Treaty of Ruby Valley. The proceedings progressed under the aboriginal title theory. In 1974, the court ruled that the Shoshone title to the land had been extinguished by encroachment of

1. References to (# XX) refer to the court's docket.

2. The ICC was created by Congress to resolve the mounting number of Native American

claims to land formerly occupied by their tribes with finality and to relieve Congress of having to determine the merits of such claims. *See United States v. Dann,* 470 U.S. 39, 45, 105 S.Ct. 1058, 84 L.Ed.2d 28 (1985).

American settlers and awarded approximately 26 million dollars in compensation.

Also in 1974, the United States instituted a trespass proceeding against Mary and Carrie Dann[3] alleging they were violating federal law by grazing cattle on federal lands without authorization. The case wound its way up and down the legal system, with the Supreme Court weighing in on the issue of when their aboriginal title was effectively terminated by the government, before finally coming to a conclusion. When the dust settled, the one clear ruling that persevered was that any aboriginal title claim on behalf of the Shoshone Indians concerning the land involved in the 1951 litigation had been extinguished.

Many other suits have been filed based on the 1951 litigation. One case of note determined that the Shoshone people had their title totally extinguished and therefore no longer held hunting and fishing rights based on the Treaty of Ruby Valley. *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 203 (9th Cir.1991). However, no case has addressed the exact issues brought before this court.

The present lawsuit was filed September 29, 2003, in the Federal District Court of the District of Columbia. That court severed the claims brought in the original lawsuit, transferring some to the Court of Federal Claims while sending the quiet title claims to this court. The purpose of the severence was to allow a court in the district where the disputed land exists to determine the disposition of that land. The Western Shoshone National Council and the South Fork Band have since filed second amended complaints. (# 46 and # 45).

The United States has moved to dismiss the action. Concerning the South Fork Band complaint (# 45), the United States moves to dismiss on five grounds: first, that the statute of limitations on a quiet title action has run; second, that the ICC provided the exclusive remedy for plaintiffs and that any subsequent actions are barred; third, that the plaintiffs lack standing to bring this suit; fourth, that res judicata and collateral estoppel bar the present suits; and fifth, that the Treaty of Ruby Valley created no substantive rights in the Shoshone Indians. Regarding the Western Shoshone National Council complaint (# 46) the United States has moved to dismiss based on sovereign immunity or, in the alternative, to strike the complaint under Federal Rule of Civil Procedure 12(f).

## LEGAL STANDARD FOR MOTION TO DISMISS

■ In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court asks only whether the pleadings are sufficient to establish a claim, not whether the Plaintiff could find evidence to support the pleadings. *See e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001) (noting that "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations"). Therefore, for the purpose of the motion, the court accepts as true all material allegations in the complaint and construes those allegations in the light most favorable to the non-moving party. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986) (citing *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir.1983)). Dismissal is warranted only if it appears to a certainty that the Plaintiff would not be entitled to relief under any set of facts that could be proven. *Id.*

However, when subject matter jurisdiction is attacked via Rule 12(b)(1), the court

---

**3.** Carrie Dann and the Dann Band are plaintiffs to the present lawsuit.

is granted more leeway. This is so because federal courts are courts of limited jurisdiction, *Owen Equip. & Erection Co. v. Kroger*, 473 U.S. 365, 374, 98 S.Ct. 2396 (1978), and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

■ "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir.1983) (citing *Thornhill Publ'g Co. v. General Tel. Corp.*, 594 F.2d 730, 733 (9th Cir.1979)). When the court is faced with a factual attack on subject matter jurisdiction, " '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' " *Thornhill Publ'g Co., Inc.*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir.1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077. "[A]n action should not be dismissed for lack of jurisdiction without giving the plaintiff an opportunity to be heard unless it is clear the deficiency cannot be overcome by amendment." *May Dept. Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir.1980).

■ If the United States is a party to an action and it has not waived its sovereign immunity, the action must be dismissed for lack of subject matter jurisdiction. *U.S. v. Nye County, Nev.*, 178 F.3d 1080, 1089 n. 12 (9th Cir.1999); *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir.1990); *Pesci v. I.R.S.*, 67 F.Supp.2d 1189, 1194 (D.Nev.1999). The plaintiff bears the burden of proving that sovereign immunity has been unequivocally waived. *Cato v. U.S.*, 70 F.3d 1103, 1107 (9th Cir.1995).

## DISCUSSION

*1. Western Shoshone National Council Complaint*

The United States has moved to dismiss the claims raised by Western Shoshone National Council as outside the scope of the matters transferred to this court. In the alternative, the United States requests the court strike the Western Shoshone National Council complaint under Federal Rule of Civil Procedure 12(f) as redundant and immaterial. The claims contained in the Western Shoshone National Council complaint are: (1) a request to relieve the Western Shoshone National Council of the judgment rendered in *United States v. Dann*, 470 U.S. 39, 105 S.Ct. 1058, 84 L.Ed.2d 28 (1985); (2) a request for a declaration that the Treaty of Ruby Valley is in full force and effect; (3) a request for a declaration of the rights of the parties; and (4) a request for a declaration that the Western Shoshone Claims Distribution Act is unconstitutional.

■ The court has reviewed the claims contained in the Western Shoshone National Council complaint and concludes that most are a necessary part of the South Fork Band complaint. The court would not be able to quiet title in the South Fork Band, should the court reach that issue, unless the plaintiffs are relieved from the ruling that their claim to title has been extinguished as described in *Dann*, have the Treaty of Ruby Valley deemed to

be in full force and effect (as well as construed to provide substantive rights to the land in the Shoshone), and eventually declare the rights of the parties in relation to the disputed property. Thus, these three claims are redundant to the transferred causes of action and will be struck pursuant to Rule 12(f).

■ The remaining claim seeks a declaration that the Western Shoshone Claims Distribution Act, passed in 2004, is unconstitutional. This claim has nothing to do with the underlying quiet title actions and is therefore immaterial to the claims transferred to this court. Thus, the claim will be struck pursuant to Rule 12(f).

### 2. South Fork Band Complaint

Despite the long and complicated history in this matter, the proper disposition of the quiet title actions is fairly straight forward. As discussed below, the court is without subject matter jurisdiction to hear the present dispute as the Quiet Title Act's ("QTA") statute of limitations creates a jurisdictional bar in this instance.

■ The relevant portion of the QTA provides that any "civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g). An action is deemed to accrue "on the date plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id.* When determining these issues, the court "must strictly construe the Quiet Title Act's statute of limitations in favor of the government." *Shultz v. Dep't of Army*, 886 F.2d 1157, 1159 (9th Cir.1989).

■ "The statutory term 'should have known' imparts a test of reasonableness." *Id.* at 1160 (citing *California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir.1985); *Amoco Prod. Co. v. U.S.*, 619 F.2d 1383, 1388 (10th Cir.1980)). The court is thus called to determine "whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land." *Id.* "Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the United States claims 'some' interest adverse to the plaintiff." *Hawaii v. United States*, 676 F.Supp. 1024, 1033 (D.Haw. 1988), *aff'd*, 866 F.2d 313 (9th Cir.1989).

■ The extensive litigation that preceded the current action makes it impossible to conclude that South Fork Band neither knew nor should have known that the United States claimed an interest in the land covered by the Treaty of Ruby Valley, adverse to that of South Fork Band, more than 12 years ago. The initial 1951 litigation was more than sufficient to place a reasonable landowner on notice that the United States claimed an interest in the land. The sole purpose of that litigation was to determine who owned the disputed property; property which included nearly half of the land covered by the Treaty of Ruby Valley. The United States' assertion of a right to land settled by its citizens that includes half the land demarcated by a prior treaty would provide clear notice to a reasonable landowner that the United States claimed significant property interests adverse to that owner.

In addition, the *Dann* case initiated in 1974 provided even greater warning that the United States intended to assert a right to land covered by the Treaty of Ruby Valley. In that case the United States argued that it had effectively terminated the rights of the Shoshone people to own the land or even graze cattle on it. The government's position was clearly contrary to any asserted title rights the Shoshone may have had and would have placed a reasonable landowner on notice of the adverse claims.

South Fork Band argues that the prior litigation involving aboriginal title was sufficiently separate and distinct from any battle over treaty title that the statute of limitations should not have begun running at that time. Specifically, South Fork Band relies on the case of *Fadem v. United States*, 52 F.3d 202 (9th Cir.1995), for the proposition that an attack on one portion of a property does not give rise to notice of an attack on a separate portion of the same property. *Fadem* concluded that the rule laid down in *Knapp v. United States*, 636 F.2d 279 (10th Cir.1980) (determining that knowledge of the "contours" of the government's claim is sufficient to start the running of the statute of limitations), was inapplicable because "[t]here was no evidence, such as the deed in *Knapp*, to give the Fadems notice the Government would assert a claim to the western section." *Fadem*, 52 F.3d at 207.

The present case is more in line with the reasoning in *Knapp* than *Fadem*. In this case the Treaty of Ruby Valley provided a clear declaration and acknowledgment that the Shoshone people claimed a large portion of land. When the 1951 litigation attacked the claim to nearly half of that land, the Shoshone were placed on notice that the United States might have a claim against the remaining land described by the treaty. Thus, the Shoshone were apprised of the contours of the United State's claim in that they had a well defined tract of land to which the United States had laid claim to, without specifying boarders, an interest of nearly one half the land. This interest claimed by the United States was adverse to any claim of ownership by the Shoshone and effectively began the running of the statute of limitations. The subsequent *Dann* action only reinforced this conflict and leaves the court convinced that no reasonable landowner would not have known of the adverse claims of the United States.

As both of these actions occurred well outside of the twelve year statute of limitations contained in the QTA, the court concludes that the QTA bars the present lawsuit. As the statute of limitations in the QTA defines the court's jurisdiction based on the specific waiver of sovereign immunity, *see United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), the court's conclusion that the statute of limitations bars the present action deprives the court of subject matter jurisdiction over the claims presented.

IT IS THEREFORE ORDERED that the United States' motion to dismiss (# 52) the second amended complaints is GRANTED;

The motion for leave to file an amicus brief (# 44) filed by the Indigenous Law Institute is GRANTED. The court has taken the brief into consideration.

The Clerk shall enter judgment accordingly.